7358

### STEWART v. MORRIS.

CONTRACTS—LEASE.—Upon construing the leases here in question together as they should be, it is held to be the intention of the parties that. defendant shall pay to plaintiff's lessor the rent provided in that lease.

Before GARY, J., Richland, May, 1908.    Affirmed.

Controversy, without action, by A. R. Stewart against A. G. Morris.   From Circuit judgment, defendant appeals.

*Mr. Lewis Haskell,* for appellant, cites: *Assignment for term of years:* 24 Cyc., 972.   *Meaning of "period:"* 6 Words & Phrases, 5302; 8 Id., 6917.   *Renewal clause passes to assignee:* Cyc., 996-7.

*Messrs. Lyles & Lyles,* contra, cite: *Intention of parties must govern:* 9 Cyc., 577, 579, 582; 19 S. C., 124; 19 L. R. A., 456; 14 S. C., 165; 22 S. C., 287, 454; 24 S. C., 497; 36 L. R. A., 285.   *Meaning of "subject to:"* 7 Words & Phrases, 6712; 4 Ohio St., 445; 69 S. W., 635; 71 App. Div. N. Y., 574; 47 Hun., 246.   *Meaning of "provisions:"* 6 Words & Phrases, 5732.   *Nature and objects of the agreements and situation of the parties:* 9 Cyc., 587; 54 L. R. A., 247; 56 L. R. A., 246; 23 S. E., 692.   *Contract between plaintiff and defendant is an assignment of a leasehold interest:* 18 Ency., 656; 15 L. R. A., 236; 1 Wood Land. & T., Am. Ed., pars. 258, 239, 327; 33 L. R. A., 607; 86 Am. Dec., 394.   *No particular words are necessary to create a covenant:* 8 Ency., 55; Wood's Land. & Ten., sec. 301.   *Provision for annual rental is a covenant to pay rent:* 8 Ency., 58; Wood's L. & T., sec. 302; 3 P. & W., 461; 1 B. & C., 410; 76 E. C. L., 765; 2 Bay, 108, 195; 24 Ind., 23.   *Such covenant runs with land and is binding on assignee:* 6 Rich., 208; 3 P. & W., 461; 27 Barb., 104; 8 E. C. L., 113; 28 S. E., 696; 33 L. R. A., 612; 15 L. R. A.,

236; 76 Am. Dec., 481; 1 Gray, 325; 20 Bard., 269; 86
Am. Dec. 394; 24 Ind., 23; 14 Wis., 272; 44 Tex., 415;
Wood's L. & T., secs. 302, 333, 336. *Assignee is bound to
pay rent in absence of covenant:* 99 N. C., 551; 1 Gray,
325; 44 Tex., 413; 61 Tex., 131; 12 Mo. App., 579; 90
Ill., 312; Taylor's L. & T., par. 16; 8 Bush., 74; 18 Ency.,
667.

November 3, 1909. The opinion of the Court was deliv-
ered by

Mr. Justice Hydrick. On May 16, 1900, the Olympia
Cotton Mills leased the old Graham quarries, lying in and
near Columbia and adjacent to the Olympia Mills, to
plaintiff. On September 23, 1903, the plaintiff leased them,
together with a quarrying plant, to the defendant, the lease
to take effect October 1, 1903. This is a controversy,
without action, under section 374 of the Code, to determine
whether the plaintiff or the defendant is liable for the rent
reserved to the Olympia Cotton Mills, from October 1,
1903, to March 1, 1904, which, it is agreed, amounts to
$166.70. The Circuit Court held that the defendant was
liable therefor, and gave judgment accordingly. The
defendant appealed.

The question arises upon, and is to be determined by, a
construction of the two leases.

So much of the lease from the Olympia Mills to the
plaintiff as throws light upon the question is as follows:
"The party of the second part (Olympia Cotton Mills)
agrees that it will lease to the party of the first part (the
plaintiff here) the said quarry and so much of the said land
as lies adjoining thereto, as is covered by the reservation
for quarry purposes above indicated, for the period of ten
years from the date of said lease, at an annual rental of four
hundred dollars, to be paid annually in rock, such as may be
produced from said quarry, suitable for mill purposes or
road work, and to be delivered, from time to time, during
each year, as, under its requirements, the party of the second

part may call for it, the party of the first part, however, not to be required at any time to deliver more than such proportion thereof as shall correspond to the portion of the year which may then have elapsed; the price at which such stone is to be furnished is to be the market price prevailing at such time.

"It is further stipulated and agreed that, at the expiration of the said ten years, so covered by such lease, the party of the first part shall have the right to call for a renewal thereof for a like period of ten years, at a rental to be fixed by arbitration, each party selecting an arbitrator, and the two selecting a third: *Provided, however,* That this right to a renewal shall not include any portion of the land reserved as adjacent to said quarry, which may at that time be actually needed by the party of the second part for erection of houses thereon, outside of the line of danger from the operations of the said quarry.

"It being desired by the party of the second part to establish a common railroad near to the Granby Cotton Mills and the Olympia Cotton Mills, for the purpose of affording access to the said mills for their present and future requirements, and also to the quarry hereinbefore referred to, and to the quarry now operated by the Stewart Stone Company, on lands purchased from the Columbia Land and Investment Company, any of the three systems of railroad now owning tracks in that vicinity, or any other railroad company hereafter desiring to build, to have the privilege of connecting with said common track and over it, of obtaining access to any of the points above stated; to further purposes of the party of the second part, the party of the first part hereby agrees to relinquish its easement for quarry purposes in so much of the Granby railroad track as would be covered by the said common track or by the Southern Railway in laying its spur track to connect with said common track, such relinquishment to begin as soon as said common track shall be ready for use, and to be connected with the three systems

of railroad above referred to, and to continue so long as access to the said quarries shall be furnished over the same.

"In the meantime the party of the first part is to have the right to use the track connecting the Granby Railroad track with the S. A. L. track, for the purposes of said quarries, such right to again become operative· in case of the abandonment or interruption, at any time, of the use of the said common track in such manner as to prevent access over it by the S. A. L. Railroad to said quarries. This is not to be construed as conferring upon the party of the first part the right to grant the privilege of the use of said track for any other purpose than to transfer cars to and from its said quarries."

The lease from plaintiff to defendant, omitting merely formal points, is as follows: "That the parties of the first part (the plaintiff herein and Stewart Stone Company) agree to lease to the party of the second part (the defendant herein) the quarry and plant located near the southern boundary of the city of Columbia, County of Richland, and State of South Carolina, known as the old Graham Quarry, at and for the full unexpired period of the lease of said quarry now held by the Stewart Stone Company from the Olympia Cotton Mills, subject to the provisions and limitations of said lease, and with all the rights and powers conferred upon the Stewart Stone Company by the said lease. The plant included hereby consisting of: (Property enumerated and described.)

"And it is agreed: That the party of the second part shall operate said quarry and shall pay to the party of the first part, for the use of the said quarry and plant aforesaid, a royalty of five cents (5 cents) per ton of two thousand (2,000) pounds; the royalty to be ascertained by taking the weights of the railroad company of all stone shipped: *Provided, however,* That the party of the second part shall pay to the parties of the first part a minimum royalty on five thousand (5,000) net tons for each and every month; the amount of ·stone shipped every month to be stated, and the

royalty therefor to be paid on or before the twentieth (20th) day of each and every month for the shipment of the preceding month.

"It is further stipulated and agreed: That the parties are to have the joint use of the spring near said quarry property for drinking purposes until the same may be destroyed by the progress of quarry operations.

"It is further stipulated and agreed: That neither of the parties of the first part shall, during the continuance of this lease, engage in the business of crushing stone at the city of Columbia, or within ten miles thereof.

"And it is further stipulated and agreed: That the party of the second part shall have the option within three (3) months from the first day of October, 1903, of purchasing the lease of the parties of the first part, now held by them from the Olympia Cotton Mills, and the plant above specified, at the price of fifteen thousand ($15,000) dollars.

"It is further stipulated and agreed: That in case of default in the payment of the royalty hereby reserved and stipulated to be paid by the party of the second part for the period of thirty (30) days, the parties of the first part may elect to treat the lease as terminated.

"It is further stipulated and agreed: That the parties of the first part reserve the right of the use of the railroad track leading from the quarry to the line of the several railroads, together with the Granby Railroad track, jointly with the party of the second part; it not being intended, however, to convey to the party of the second part the right to the use of more of the Granby track than is necessary for the convenience of access to the quarry hereby leased.

"And it is further stipulated and agreed: That the parties of the first part are to turn over to the party of the second part all orders and contracts that they may have for the delivery of crushed stone on the first day of October, 1903, the day at which this lease is to become operative; the party of the second part giving satisfactory security for the fulfill-

ment of the contract heretofore entered into with the United States Government at Charleston, S. C.

"Should the option to purchase not be exercised, the plant described above shall be returned at the expiration of the lease in like order as received, reasonable wear and tear excepted and the quarry left in ordinary working order. The party of the second part is to have the right to remove anything put upon the land."

In construing an instrument of writing, for the purpose of ascertaining the intention of the parties to it, the whole instrument must be considered, and effect must, if practicable, be given to every clause and word in it. And the language must be interpreted in its natural and ordinary sense, except that when technical words are used they must be given their technical meaning, unless the context requires that they be given some other meaning. *Shaw* v. *Robinson*, 42 S. C., 345, 20 S. E., 161. Again, when one instrument of writing refers to another for its terms, the instrument referred to should be construed in connection with the first instrument in ascertaining the intention of the parties. The lease from the plaintiff to the defendant refers to the lease from Olympia Mills to the plaintiff, and says, in explicit language, that it is "subject to the provisions and limitations of said lease, and with all the rights and powers conferred upon the Stewart Stone Company by the said lease." Therefore, in deciding the question before us, we must take into consideration the provisions of both leases.

The lease of Olympia Mills to the plaintiff provides that the rent of $400 per annum is to be paid in crushed rock, *"such as may be produced from said quarry,"* at the prevailing market price at the time of delivery. The lease from the plaintiff to the defendant provides that the lessors shall not, "during the continuance of this lease, engage in the business of crushing stone at the city of Columbia, or within ten miles thereof." Construing these provisions of the two leases together, it seems clear to us that it was the intention of the parties that the defendant should pay the

rent to the Olympia Mills, according to the provision of the
lease of the mills to the plaintiff.   Otherwise that provision
of that lease could not have been complied with at all;
because, by the terms of the lease from plaintiff to defend-
ant, the plaintiff was not to engage in the business of crush-
ing stone at Columbia, or within ten miles thereof, during
the continuance of the lease.   It cannot reasonably be con-
tended that the parties contemplated that plaintiff would
establish a crushing plant more than ten miles from Colum-
bia, in order to get stone with which to pay the rent.   The
stipulation that plaintiff was not to engage in the business
at Columbia, or within ten miles thereof, during the lease,
and the further stipulation that he was to turn over to
defendant all orders and contracts for crushed stone on hand
when the lease went into effect, shows an intention on his
part to go out of the business; and the provision that if the
option to purchase the plaintiff's lease and plant should not
be exercised, the plant and quarry were to be returned in
good order, affords a reasonable inference that plaintiff did
not intend to resume that business, unless the plant and
quarry were thrown back on his hands.   Nor is it reason-
able to suppose that the parties contemplated that plaintiff
would purchase the necessary quantity of stone from the
defendant to pay the rent.   If that had been their intention,
it is reasonable to suppose that it would have been provided
for in the lease, and the price agreed upon.   Otherwise the
plaintiff would have had to pay any price the defendant
chose to charge for it, or buy it elsewhere, or go more than
ten miles from Columbia to crush it.   The provision that
the stone must be *"such as may be produced from said
quarry,"* shows that it was intended that it should be stone
from said quarries.   Both parties knew this, for the lease
was before them.   One or the other must pay the rent in
stone from said quarries.   The plaintiff could not have done
it during the continuance of his lease to defendant.   There-
fore, the duty was upon the defendant to do it.   The words,
"subject to the provisions and limitations of said lease, and

with all the rights and powers conferred upon the Stewart Stone Company by said lease," mean that the defendant was charged with all the burdens imposed by that lease, and was entitled to all the privileges and benefits conferred by it. No other interpretation can be given to the language used without doing violence to its natural and ordinary meaning.

The other stipulations in the lease, such as the payment of a royalty on the rock quarried, and the reservation of a joint use with defendant of the railroad tracks, do not militate against the intention which we have deduced from the language of the leases.

From this view of the case, it becomes unnecessary to decide whether the lease from the plaintiff to the defendant is an assignment of the lease from Olympia Mills to plaintiff, or a sub-lease.

Judgment affirmed.