## 1788

James M. SKINNER, Appellant v. Henry ELROD, Respondent.

(417 S.E. (2d) 599)

Court of Appeals

*James M. Skinner, pro se.*

*Donald L. Van Riper,* of *Van Riper, Temple, Mann and Briggs,* Greenville, *for respondent.*

Heard Jan. 16, 1992.

Decided March 16, 1992.

SHAW, Judge:

Appellant, James M. Skinner, brought this action against respondent, Henry Elrod, for breach of a non-competition clause of a contract, conversion, and tortious interference with contractual rights. Elrod answered and counterclaimed for payment due on a promissory note. The case was referred to the master-in-equity who awarded Skinner liquidated damages for breach of the non-competition agreement and granted judgment to Elrod on the unpaid balance of the note along with fees and costs. The two amounts were offset resulting in a net judgment of $77.35 for Elrod. Skinner appeals. We affirm.

The record reveals the following facts. On July 7, 1983, Skinner, by written contract, purchased the photography business and equipment of Elrod, a well-known commercial photographer. The contract contained a non-competition agreement which prohibited Elrod from competing in the photography business in South Carolina, North Carolina, Georgia and Tennessee for a period of three years. The purchase price was a total of $57,000 with $30,000 being paid in cash and the remainder being financed by Elrod. Skinner executed a promissory note which was secured by the business assets. Skinner defaulted on the note and Elrod took possession of some of the collateral. Elrod did not dispose of the collateral. Skinner then brought this action.

The contract between the parties contains the following provisions pertinent to this case:

> The Seller agrees to sell to Purchaser . . . work in progress as of July 10, 1983, *excluding work in progress, identified on Exhibit "B" attached hereto and incorporated herein by reference,* together with any and all contracts and other business arrangements that the business of Henry Elrod Commercial Photography, has as of July 10, 1983. (Emphasis added.)
>
> For a period of three (3) years from July 10, 1983, through July 10, 1986, within the radius of the States of South Carolina, North Carolina, Georgia and Tennessee, th seller shall not canvass, solicit or accept any business for any similar photography company from any present or past clients of Henry Elrod Commercial Photography, to give any other person, firm or corporation the right to canvass, solicit or accept any business for any other similarly formed photography company from any present or past clients of Henry Elrod Commercial Photography. . . .
>
> In view of the difficulty of determining the amount of damages which may result to the Purchaser from a violation of any of the provisions of this paragraph, Seller agrees to pay to Purchaser the sum of [$26,900], as liquidated damages, for any violation of this restrictive covenant. . . .

It is undisputed that Exhibit "B" was never prepared.

The master determined one violation of the non-competition

agreement occurred when Elrod accepted a job for Thermo Kinetics, thus entitling Skinner to recover $26,900 in damages. He further stated:

> Because the court finds only one violation of the non-competition agreement, it is not necessary to address Skinner's argument that he is entitled to $26,900 for each violation. However, even if more than one violation had been proved to the satisfaction of the court, Skinner's argument compounds the unreasonableness of the liquidated damages figure.

On appeal, Skinner first contends the master erred in finding only one violation of the non-competition clause occurred. He further asserts that, if more than one violation occurred, he is entitled to damages of $26,900 for each violation instead of a total of $26,900 for all violations. We disagree.

In an action at law referred to a master for final judgment, this court must examine the record to determine if there is any evidence which reasonably supports the master's findings. *Townes Associates Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976); *May v. Hopkinson*, 289 S.C. 549, 347 S.E. (2d) 508 (Ct. App. 1986). The master, as the trier of facts, is the best judge of the credibility of the witnesses. *Halbersberg v. Berry*, 302 S.C. 97, 394 S.E. (2d) 7 (Ct. App. 1990).

Skinner alleges other violations occurred besides the work performed for Thermo Kinetics. He first lists as a violation work allegedly performed for the Rando Machine Corporation. The only evidence in the record of this matter is from the operations analyst at Elrod's bank who identified a check from a company called Rando and a deposit slip of Elrod's which has Rando written on it showing an amount of $260. Although Skinner states in his brief the check was dated September 23, 1983 and was for pictures, the poor quality copies of the check and deposit slip in the record are illegible and there is absolutely no other evidence in the record, to support this assertion. Further, when asked about different checks Skinner put into evidence, Elrod stated, "we'll take exception to Rando." Even if the copy of the check and deposit slip depicted as alleged by Skinner, the evidence of record is woefully inadequate to establish a breach of the noncompeti-

tion agreement as relates to the Rando Company. We further note that the master specifically addressed the other allegations of violations by Elrod but made no mention of any involving the Rando Company. Skinner made no motion under Rule 59(e), SCRCP for the master to alter or amend his order to consider this specific allegation. Therefore, the issue is not properly preserved for review. *Kneece v. Kneece*, 296 S.C. 28, 370 S.E. (2d) 288 (Ct. App. 1988). *Talley v. S.C. Higher Education Tuition Grants Committee*, 289 S.C. 483, 347 S.E. (2d) 99 (1986).

Skinner asserts evidence of a check from a Thomas L. Lewis, Jr. for $47.20 dated April 19, 1985 shows a violation of the noncompetition clause. The master found that Elrod was "casually taking snapshots at a retirement party for no profit." There is more than ample evidence in the record to support this finding and we find no violation concerning this matter.

Skinner also alleges violations occurred when Elrod took pictures for three different weddings. Elrod testified two of the weddings, which took place on June 4, 1983 and July 16, 1983 were part of the work in progress that was excluded under the contract. As to the third wedding which occurred in January 1984, Elrod testified Skinner told him he knew the couple getting married but that "he didn't do weddings" and therefore gave Elrod permission to shoot the wedding. Finally, Elrod stated "Well . . . on the weddings, [Skinner] didn't do weddings. He said he didn't do weddings and he didn't want to fool with [them]. And . . . we made arrangements and, with his permission, we did [them]."

Skinner asserts the contract between them requires any modification thereof to be in writing and there was no written confirmation that Skinner consented to Elrod shooting these weddings. We first note a thorough reading of the contract reveals no such provision requiring written modification. Further, two of the weddings were, according to Elrod, part of the work in progress.

Skinner makes no argument and cites no law requiring the master to disregard Elrod's testimony regarding their verbal agreements. The parol evidence rule generally excludes evidence which would give a perfectly clear agreement a different meaning or effect than that indicated

by the plain language of the agreement. *Taylor by Taylor v. Taylor*, 291 S.C. 261, 353 S.E. (2d) 156 (Ct. App. 1987). However, where a contract is ambiguous, parol evidence may be admitted to supply the deficiency and establish the true intent. *U.S. Leasing Corp. v. Janicare, Inc.*, 294 S.C. 312, 364 S.E. (2d) 202 (Ct. App. 1988). Here, because no Exhibit B was ever prepared, the contract is ambiguous as to what was to be excluded from the contract as work in progress and Elrod's testimony was properly admitted to supply the deficiency.

As to the third wedding, the master appears to have considered it along with the first two as part of the work in progress. Again, Skinner made no Rule 59(e), SCRCP motion in regard to this finding. Further, no provision of the contract addresses whether Elrod can perform in a photography field in which Skinner does not compete. Because this specific situation was left unaddressed in the lease, the court may look to the circumstances surrounding the bargain as an aid to ascertaining the intention of the parties. *Columbia East Associates v. Bi-Lo, Inc.*, 299 S.C. 515, 386 S.E. (2d) 259 (Ct. App. 1989).

Finally, Skinner contends performance of photography work for the American Schlafhorft Company by Elrod was a violation of the non-competition clause. Without rehashing the testimony below, we hold the record supports the finding of the master that the Schlafhorft job was part of a joint venture between the parties and was therefore outside the purview of the non-competition agreement. Because we affirm the master's finding of only one violation, we need not address Skinner's contention that he is entitled to individual liquidated damages for each violation. However, even if we were to consider the issue, we agree with the master that the amount would be so disproportionate to the actual damages that it would be reasonable.

The second issue before us on appeal is whether the master erred in finding Elrod was not guilty of conversion in repossessing business assets and in finding Elrod did not fail to properly dispose of the collateral in a commercially reasonable manner. Skinner argues he was out of town when the repossession occurred and, at that time, he was not in default. He therefore argues Elrod had no right to repossess the items and is therefore guilty of conversion. He further argues that,

even if Elrod had the right to repossess the collateral, his failure to dispose of the equipment pursuant to S.C. Code Ann. §§ 36-9-504 and 36-9-505 (Supp. 1991) constituted tortious conversion. We disagree.

S.C. Code Ann. § 36-9-503 (Supp. 1991) provides, in part, "Unless otherwise agreed a secured party has on default the right to take possession of the collateral." It is undisputed that Skinner was in default as of May 1, 1988. Further, the master found, and the record supports, that the repossession occurred in July 1988. There being no provision otherwise, Elrod had the right to repossess the collateral. Further, there is no basis for Skinner's claim that failure to dispose of the collateral by sale amounts to a waiver of all claim for any deficiency judgment by the creditor. S.C. Code Ann. § 36-9-504(1) (Supp. 1991) provides in pertinent part:

> A secured party after default *may sell, lease, or otherwise dispose* of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. (Emphasis added.)

S.C. Code Ann. § 36-9-505(1) (Supp. 1991) requires disposal of collateral by a secured party who has taken possession in certain instances dealing with consumer goods. However, the case at hand does not involve consumer goods. S.C. Code Ann. § 36-9-505(2) (Supp. 1991) provides that in other cases involving consumer goods or other collateral "a secured party in possession *may*, after default, *propose* to retain the collateral in satisfaction of the obligation." (Emphasis added.) There is absolutely no indication that Elrod proposed to retain the collateral in his possession in satisfaction of the debt. Further, the Official Comment to S.C. Code Ann. § 36-9-506 (Supp. 1991) provides:

> Except in the case stated in Section 9-505(1) (consumer goods) the secured party is not required to dispose of collateral within any stated period of time. Under this section so long as the secured party has not disposed of collateral in his possession or contracted for its disposition, and so long as his right to retain it has not become fixed under Section 9-505(2), the debtor or another secured party may redeem.

We therefore find no error in the master's findings regarding the repossession of collateral.

For the foregoing reasons the order below is affirmed.

Affirmed.

SANDERS, C.J., and GOOLSBY, J., concur.