511 S.E.2d 407

**Robert S. KOONTZ, Appellant,**

**v.**

**James G. THOMAS, Jr., and Thomas and Denziger, P.A., Respondents.**

No. 2933.

Court of Appeals of South Carolina.

Heard Dec. 9, 1998.

Decided Jan. 25, 1999.

Colden R. Battey, Jr., John M. Tatum, III, and Derek C. Gilbert, all of Harvey & Battey, of Beaufort, for appellant.

Robert F. Masters, II, Claron A. Robertson, III, and Theodore L. Manos, all of Robertson & Associates, of Charleston, for respondents.

HEARN, Judge:

Robert S. Koontz instituted this action against Thomas and Denziger, P.A., an architectural firm, and James G. Thomas, Jr. individually (collectively "T & D"), alleging professional negligence, negligent misrepresentation, and breach of contract in connection with an architectural contract. Koontz appeals from summary judgment in favor of T & D on all three causes of action. We affirm.

In December of 1992, Koontz and T & D entered into an agreement for T & D to design Koontz's new residence in Beaufort, South Carolina. The agreement provided that (1) T & D's compensation would be 10% of the cost of construction; (2) T & D did not warrant or represent that actual construction bids or negotiated prices would not vary from any construction cost estimate T & D prepared; (3) there was no fixed upper limit of construction costs established in the contract, and the parties could agree to a limit only in a signed writing; (4) T & D's plans and specifications required Koontz's approval; and (5) the entire project would be completed within twenty four months, unless more time was needed through no fault of T & D.

With Koontz's input, T & D developed a schematic design for the home. The first plans were sent to Koontz on June 22, 1993. On June 10, 1994, after numerous designs, revisions, and modifications, Koontz approved a plan with an $800,000 construction estimate. However, Koontz believed that there was "a good chance that the construction cost could be lower than [T & D's] estimate of $800,000 ." Thereafter, three preselected contractors submitted construction bids. Contrary to Koontz's prediction, the bids ranged from $983,000 to $1.2

million. Koontz terminated the contract and demanded that T & D return all architectural fees paid through the date of termination.

T & D offered to continue working on the project, suggesting revisions and modifications that would lower construction costs, but Koontz refused the offer Subsequently, Koontz hired a different architect to whom he paid $39,463 to design a home that was ultimately constructed for $870,000. Koontz then instituted this action against T & D, alleging professional negligence, negligent misrepresentation, and breach of contract.

On all three causes of action, Koontz made essentially the same allegations. Koontz alleged T & D negligently represented that the construction phase of the building project could be completed for $400,000, and the parties agreed to limit the project to this amount. Thus, T & D was negligent in designing a home exceeding that amount by 100%. Koontz further alleged T & D negligently represented that the preliminary architectural services necessary to the project could be completed within a reasonable time, and that T & D would charge reasonable fees for the design. T & D answered asserting affirmative defenses and counterclaimed for breach of contract and quantum meruit.

On December 27, 1996, T & D moved for summary judgment on all three of Koontz's causes of action. On June 20, 1997, the trial court granted summary judgment in favor of T & D on each cause of action. Koontz's subsequent motion for reconsideration was denied. This appeal followed.

### Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Kreutner v. David*, 320 S.C. 283, 285, 465 S.E.2d 88, 90 (1995). In ruling on a motion for summary judgment, the trial court must view the evidence and all inferences which can be reasonably drawn therefrom in the light most favorable to the non-moving party. *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994).

*Discussion*

### *I. Summary Judgment Standard*

Koontz first argues the trial court used an incorrect standard in considering the motions for summary judgment, noting that in each of the three orders granting summary judgment, the trial court stated it had considered the evidence in the light most favorable to the "Defendants." Such an error would normally warrant reversal because T & D, the defendants, were the moving parties, and the law clearly requires the trial court to view the evidence in the light most favorable to the non-moving party, Koontz. *Koester* at 493, 443 S.E.2d at 394. However, the trial judge has expressly ruled that his error in this regard was clerical rather than substantive in nature, and the error has been corrected in accordance with Rule 60(a), SCRCP. Having reviewed the relevant orders, we are satisfied that the trial judge's error was indeed clerical and had no prejudicial effect on his reasoning in connection with the summary judgment motions. Accordingly, we decline to address this issue further.

### *II. Breach of Contract*

A. Construction Costs

Koontz asserts the trial court erred in granting T & D summary judgment on his breach of contract claim. Specifically, Koontz alleges parol evidence should have been admissible in the breach of contract action to establish an oral agreement to limit construction costs to $400,000. We disagree.

"Where an agreement is clear and capable of legal construction, the court's only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it." *Ebert v. Ebert,* 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995), *cert. denied,* (Oct. 17, 1996). The court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994). It has long been held that to ascertain the intention of an instrument, the court must first look to its

language, and if it is perfectly plain and capable of legal construction, then that language alone determines the instrument's force and effect. *Superior Auto. Ins. Co. v. Maners,* 261 S.C. 257, 263, 199 S.E.2d 719, 722 (1973); *see also McPherson v. J.E. Sirrine & Co.,* 206 S.C. 183, 204, 33 S.E.2d 501, 509 (1945) (the court cannot read words into a contract which impart a wholly unexpressed intent when the contract was executed); *Stewart v. Morris,* 84 S.C. 148, 153, 65 S.E. 1044, 1046 (1909) (the court is obliged to interpret the language used in its natural and ordinary sense, except where technical language or the context requires another meaning).

Koontz argues that his contract with T & D is ambiguous because it is "silent as to the amount of construction costs." In support of this contention, Koontz cites *Williams & Assocs. v. Ramsey Prod. Corp.,* 19 N.C.App. 1, 198 S.E.2d 67, *cert. denied,* 284 N.C. 125, 199 S.E.2d 664 (1973), for the proposition that construction contracts that are silent on the issue of a maximum cost limitation fail to disclose the parties' intention as to the cost of structure contemplated. Under the facts and circumstances of this case, we decline to adopt this reasoning.

"The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary or explain the written instrument." *Gilliland v. Elmwood Properties,* 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990). However, if a contract is ambiguous, parol evidence is admissible to ascertain the true meaning and intent of the parties. *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.,* 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977); *Skinner v. Elrod,* 308 S.C. 239, 244, 417 S.E.2d 599, 602 (Ct.App.1992). An ambiguous contract is one that can be understood in more ways than just one or is unclear because it expresses its purpose in an indefinite manner. *Klutts Resort Realty* at 89, 232 S.E.2d at 25.

In our view, the parties' decision not to include a maximum cost limitation in the contract does not create contractual ambiguity. Koontz's contract with T & D specifically addresses the cost of construction, stating the parties expressly declined to set a maximum cost limitation. Moreover, the parties intended to leave open the possibility of a later written

agreement. We are aware of no authority, and Koontz cites none, which convinces us the parties to a construction contract may not, without creating contractual ambiguity, decline to set a fixed construction cost in the initial stages of the undertaking.

■ Koontz further argues that even if the contract is not ambiguous and parol evidence of a prior or contemporaneous agreement is barred, the parties subsequently modified the contract to limit the construction price to $400,000. This argument is likewise unavailing.

■ A written contract may be modified by oral agreement even if the contract expressly states that all changes must be in writing. *Lazer Constr. Co. v. Long,* 296 S.C. 127, 130, 370 S.E.2d 900, 902 (Ct.App.1988). However, we are unable to ascertain from the record before us that the parties made such an agreement. Koontz relies upon a letter he wrote on June 7, 1993, setting a construction limit of $400,000. The record does not reveal that T & D accepted this term. Moreover, on June 10, 1994, Koontz wrote a letter indicating his approval of plans and specifications with a construction estimate of $800,000.[1] Thus, any agreement to a $400,000 construction budget made on June 7, 1993, was subsequently modified by T & D's offer and Koontz's acceptance of an $800,000 construction budget on June 10, 1994.

## B. Excessive Fees

We need not address Koontz's argument that excessive construction costs led to excessive fees. The contract stipulates that T & D's fees would be 10% of the final cost of construction. Because we do not find that T & D's construction estimates were excessive or unreasonable given Koontz's approval of the $800,000 plans, it follows that any fees based

---

[1]. We note in addition that Koontz's own expert testified that a reasonable variation between an architect's estimate and actual construction bids is 20% – 25%. Using Koontz's approval of the $800,000 estimate as a basis, a reasonable range for actual bids would be $960,000 – $1,000,000. The lowest bid was $983,000, a number squarely within the recommended range.

on a percentage of the final construction costs must also be reasonable.[2]

## C. Timeliness

We also find no merit in Koontz's claim that T & D breached the contract by failing to complete preliminary architectural services in a timely manner. Koontz points to no specific contractual provision which has been breached. Moreover, parol evidence of a prior or contemporaneous agreement is not available to establish a time limitation, and there is no evidence of a later agreement.

While the contract calls for an overall scheme of twenty-four months to complete the entire project, it is silent about when T & D would complete the design and planning phase so that construction could begin. Where a contract does not provide a time frame for performance, the court will imply a reasonable time. *Ebert v. Ebert,* 320 S.C. 331, 341, 465 S.E.2d 121, 126 (Ct.App.1995). Koontz's expert submitted an affidavit wherein he opined that "the standard of care of a reasonably prudent architect as to completing plans on this proposed project would be approximately six to nine months." In fact, T & D sent its first set of plans to Koontz on June 22, 1993, approximately six months after the parties executed their agreement. However, Koontz was still suggesting changes and modifications as late as January 27, 1994, more than one year after the parties entered into the contract.

### III. Professional Negligence

Koontz asserts the trial court erred in holding that the economic loss doctrine bars his professional negligence claim against T & D. We disagree.

[T]he question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed. A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A

---

**2.** At the time he filed suit, Koontz had paid approximately $65,000 to T & D, which is less than $80,000 (10% of $800,000).

breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.

In most instances, a negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action.

*Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.,* 320 S.C. 49, 54–55, 463 S.E.2d 85, 88 (1995) (citations omitted).

Our inquiry, therefore, is whether the duties Koontz alleges in his professional negligence cause of action arise from the parties' contract or independently therefrom. We agree with the trial court that the alleged breaches of duty in this case are contractual in nature, and summary judgment for T & D was proper.

Koontz alleges T & D was professionally negligent in: (1) designing a project exceeding the agreed upon scope, size, character, and cost in excess of $400,000; (2) charging excessive fees for incomplete plans; and (3) excessively delaying completion of the plans and specifications. These allegations are merely veiled breach of contact claims and have been discussed in Section II, *supra.* Thus, Koontz's tort allegations of professional negligence cannot be maintained as a separate cause of action.[3]

### IV. Negligent Misrepresentation

Finally, Koontz argues the trial court erred in granting summary judgment on his negligent misrepresentation cause of action. We disagree.

In his negligent misrepresentation claim, Koontz asserts T & D made the following oral representations that induced him to enter into the contract: (1) the construction phase of the project could be completed for $400,000; (2) the design phase could be completed in a reasonable time; and (3) the architect's fees for services rendered would not be excessive.

---

**3.** Ironically, Koontz's own expert, hired to prove T & D's professional negligence, submitted a sworn affidavit that actually proves T & D was *not* professionally negligent. *See* note 1 and Section II.C, *supra.*

These alleged representations are not embodied in the written contract between the parties.

The trial court held that parol evidence was inadmissible to prove Koontz's negligent misrepresentation claims. This was error. In South Carolina, as in the majority of jurisdictions, the parol evidence rule bars oral testimony in certain contract cases. However, our supreme court has held the parol evidence rule is not applicable in cases involving the tort of negligent misrepresentation. *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577 (1990).

Nonetheless, we affirm the trial court's decision to grant summary judgment on Koontz's negligent misrepresentation cause of action. In order to state a claim for negligent misrepresentation, the plaintiff must allege the following:

(1) the defendant made a false representation to the plaintiff;

(2) the defendant had a pecuniary interest in making the statement;

(3) the defendant owed a duty of care to communicate truthful information to the plaintiff;

(4) the defendant breached that duty by failing to exercise due care;

(5) the plaintiff justifiably relied on the representation; and

(6) the plaintiff suffered a pecuniary loss as the proximate result of reliance on the representation.

*Fields v. Melrose Ltd. Partnership*, 312 S.C. 102, 105, 439 S.E.2d 283, 285 (Ct.App.1993). In addition, to be actionable, the representation must relate to a present or pre-existing fact and be false when made. *Id.* "The representation cannot ordinarily be based on unfulfilled promises or statements as to future events." *Id.*

All of T & D's alleged representations related to future events, not existing facts. Koontz alleged T & D represented the construction phase of the project could be completed for $400,000, the preliminary architectural services could be completed in a reasonable time, and the architect's fees for services rendered would not be excessive. Even if there were evidence that the parties had agreed to limit construction costs to $400,000 initially, all plans and designs were subject to

Koontz's approval. His approval was a future event. Because he was entitled to change his mind, thereby changing the plans, their cost, the fees based on a percentage of their cost, and the time it took to complete them, the trial court correctly granted summary judgment on this cause of action.

For the forgoing reasons, the decision of the trial court is **AFFIRMED.**

CONNOR and HUFF, JJ., concur.