**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PRIVATE MORTGAGE INVESTMENT
SERVICES, INCORPORATED,
            *Plaintiff-Appellee,*

            v.                                        No. 01-1834

HOTEL AND CLUB ASSOCIATES,
INCORPORATED; ANDY HINDS,
            *Defendants-Appellants.*

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Margaret B. Seymour, District Judge.
(CA-99-4237)

Argued: April 3, 2002

Decided: July 19, 2002

Before WILKINS and MICHAEL, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Wilkins and Judge Michael joined.

---

## COUNSEL

**ARGUED:** Michael Wallace Tighe, CALLISON, TIGHE & ROBIN-
SON, L.L.P., Columbia, South Carolina, for Appellants. Jeffrey Law-
rence Payne, TURNER, PADGET, GRAHAM & LANEY, P.A.,
Florence, South Carolina, for Appellee. **ON BRIEF:** Louis H. Lang,

CALLISON, TIGHE & ROBINSON, L.L.P., Columbia, South Carolina, for Appellants.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

The principal question in this appeal is whether South Carolina's highest court would hold a professional appraiser liable to a third party for negligent misrepresentation, under South Carolina common law, in the event the third party detrimentally relied upon the professional appraiser's materially inaccurate and negligent appraisal of the "as is" market value of a parcel of real property. Based upon the trend of South Carolina jurisprudence, we answer this question in the affirmative.

I.

The controversy in this case stems from a professional real estate appraisal of a parcel of real property (the Property) located in Darlington County, South Carolina. The Property consists of a nearly three-acre tract of land with a two-story wood frame house built in approximately 1880. On September 5, 1997, Burley Smith (Smith) purchased the Property from Cypress Creek Enterprises, Incorporated (Cypress Creek) for the stated consideration of $389,000. Notably, Smith was a corporate officer of Cypress Creek. Another corporate officer of Cypress Creek, Gerald Wisener (Wisener), executed the transaction documents on behalf of Cypress Creek.

The transaction was owner-financed in part by way of a purchase-money note and mortgage. Specifically, Cypress Creek held a $330,650 purchase-money note and mortgage (the Cypress Creek Note and Mortgage) on the Property.

Just days after the transaction closed, Wisener, on behalf of Cypress Creek, hired the real estate appraisal firm Hotel and Club Associates, Incorporated of Greensboro, North Carolina to appraise the Property in order to assist Cypress Creek in selling the Cypress

Creek Note and Mortgage. Hotel and Club Associates, Incorporated specializes in appraising hospitality properties and is owned and operated by Andy Hinds (Hinds).

Hinds agreed to appraise the Property and provide Cypress Creek with "a limited appraisal with summary report including the information, the methods of analysis used, and the conclusions drawn in the valuation process." (J.A. 386). The fact that the appraisal would be a "limited" one signified that Hinds would value the Property using only one or two professionally accepted methods of valuation rather than all three of the professionally accepted methods of valuation. The three accepted methods of valuation are the income approach, the sales comparison approach, and the cost approach. Ultimately, Hinds valued the Property using the income approach and the sales comparison approach.

Hinds completed his limited appraisal and summary report of the Property (the Appraisal Report) on September 19, 1997. In the Appraisal Report, Hinds estimated that the "as is" market value of the Property under both the income approach and the sales comparison approach was $400,000 on September 10, 1997. The Appraisal Report defined "as is" market value as "[a]n estimate of the market value of a property in the condition observed upon inspection and as it physically and legally exists without hypothetical conditions, assumptions, or qualifications as of the date the appraisal is prepared." (J.A. 393). In calculating the "as is" market value of the Property under the income approach and the sales comparison approach, Hinds assumed that the highest and best use of the Property was as a traditional bed and breakfast. Notably, although the Appraisal Report states that approximately $50,000 worth of improvements to the house were needed in order for the Property to operate as a bed and breakfast, the Appraisal Report unequivocally states that the "as is" market value of the Property reflects the market value of the Property without these improvements.

In November 1997, Private Mortgage Investment Services, Incorporated (Private Mortgage) purchased the Cypress Creek Note and Mortgage from Cypress Creek for $200,000. Private Mortgage also paid a $12,000 commission to the broker who brokered the transaction. In deciding to purchase the Cypress Creek Note and Mortgage,

Private Mortgage heavily relied upon the "as is" market value of the Property as stated in the Appraisal Report. Private Mortgage had no expertise with respect to this type of property in Darlington County, South Carolina.

Much to Private Mortgage's disappointment, Smith never made a payment on the Cypress Creek Note and Mortgage. Private Mortgage had no choice but to foreclose on the Property. Private Mortgage acquired the Property at the foreclosure sale for $125,000. In December 1999, Private Mortgage sold the Property on a best efforts basis for $60,000 to a third party, the only party expressing any interest in the Property.

Private Mortgage subsequently brought the present civil action in South Carolina state court against Hotel and Club Associates, Incorporated and Hinds (collectively the Defendants). The complaint alleged two claims—professional negligence and negligent misrepresentation. Only the negligent misrepresentation claim is at issue in this appeal. With respect to that claim, Private Mortgage primarily alleged that the Defendants' appraisal of the "as is" market value of the Property at September 10, 1997, as stated in the Appraisal Report, constituted a negligent misrepresentation.

The Defendants removed the action to the United States District Court for the District of South Carolina on the basis of diversity jurisdiction. 28 U.S.C. § 1332. The case proceeded to trial by a jury on February 27, 2001. At the close of Private Mortgage's evidence, the Defendants moved for judgment as a matter of law with respect to both claims. Fed. R. Civ. P. 50(a). The Defendants, *inter alia*, sought judgment as a matter of law on the negligent misrepresentation claim on the ground that a professional real estate appraiser's appraisal of the market value of a parcel of real property is not actionable as a negligent misrepresentation under South Carolina common law. The district court granted the motion with respect to the professional negligence claim, but denied it with respect to the negligent misrepresentation claim. At the close of all evidence, the Defendants renewed their motion for judgment as a matter of law with respect to the negligent misrepresentation claim, but the district court again denied the motion. *Id.*

The jury found in favor of Private Mortgage on the negligent misrepresentation claim, and, although the jury found that Private Mortgage had suffered $57,500 in damages, the jury determined that the Defendants and Private Mortgage were equally at fault in causing such damages. Accordingly, the district court then applied South Carolina's comparative fault rule to reduce the verdict in favor of Private Mortgage to $28,750. The Defendants next renewed their motion for judgment as a matter of law, and alternatively, sought a new trial. Fed. R. Civ. P. 50(b)-(c), 59(a). The district court denied the alternative motions *in toto* and entered judgment in favor of Private Mortgage for $28,750.

The Defendants noted a timely appeal of the district court's denial of their motion for judgment as a matter of law with respect to Private Mortgage's negligent misrepresentation claim.

## II.

We review the district court's denial of the Defendants' motion for judgment as a matter of law *de novo*, and we must view the evidence in the light most favorable to Private Mortgage as the non-movant. *Knussman v. Maryland*, 272 F.3d 625, 634 (4th Cir. 2001). Judgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis to support the jury's verdict. Fed. R. Civ. P. 50(a)(1).

## III.

On appeal, the Defendants contend the district court erred by denying their motion for judgment as a matter of law with respect to Private Mortgage's negligent misrepresentation claim. According to the Defendants, the district court should have granted their motion on the basis that a professional appraiser's appraisal of the "as is" market value of a parcel of real property is not actionable as a negligent misrepresentation under South Carolina common law.[1] We disagree.

---

[1]Notably, the Defendants do not challenge on appeal the sufficiency of the evidence to support the jury's apparent finding that they failed to use due care in formulating the appraisal of the "as is" market value of the Property as of September 10, 1997.

As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court.[2] *Wells v. Liddy*, 186 F.3d 505, 527-28 (4th Cir. 1999); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue. *Id.* In so predicting, the South Carolina Court of Appeals' decisions, as the state's intermediate appellate court, "'constitute the next best indicia of what state law is,' although such decisions 'may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Liberty Mut. Ins. Co.*, 957 F.2d at 1156 (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4507, at 94-95 (1982)). In predicting a ruling by the South Carolina Supreme Court, we may also consider, *inter alia*: restatements of the law, treatises, and well considered *dicta*. *Id.*

We begin our task of determining the state of South Carolina common law regarding the issue before us by setting forth the basic elements of a negligent misrepresentation claim under South Carolina common law:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*Fields v. Melrose Ltd. P'ship*, 439 S.E.2d 283, 285 (S.C. Ct. App. 1993). The general rule under South Carolina common law is that in order to be actionable as a negligent misrepresentation, the false rep-

---

[2]All parties agree that South Carolina substantive law controls with respect to the viability of Private Mortgage's negligent misrepresentation claim.

resentation must relate to a present or preexisting fact that is false when made. *Koontz v. Thomas*, 511 S.E.2d 407, 413 (S.C. Ct. App. 1999). The corollary of this general rule is that the representation at issue cannot ordinarily be based on unfulfilled promises or statements as to future events. *Id.*

Unfortunately, the South Carolina Supreme Court has neither directly nor indirectly spoken to the issue before us. That issue is whether, under South Carolina common law, an exception to the general rule that a negligent misrepresentation must relate to a present or preexisting fact exists when the negligent misrepresentation is in the nature of a professional opinion, given by a person who intends it for the guidance of others, and a third party detrimentally relies upon it. Fortunately for our court, however, several other indicators of how the South Carolina Supreme Court would resolve the issue if presented with it, when taken together, strongly suggest that the court would rule as urged by Private Mortgage.

The first indicator of how the South Carolina Supreme Court would rule is its response to the South Carolina Court of Appeals' decision in *ML-Lee Acquisition Fund v. Deloitte & Touche*, 463 S.E.2d 618 (S.C. Ct. App. 1995), *rev'd in part on other grounds*, 489 S.E.2d 470 (S.C. 1997). In that case, the South Carolina Court of Appeals adopted the *Restatement (Second) of Torts*' approach for determining the scope of an accountant's duty to third parties who use and rely on the accountant's work—*Restatement (Second) of Torts* § 552. *ML-Lee*, 463 S.E.2d at 635.

*Restatement (Second) of Torts* § 552 provides as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Restatement (Second) of Torts* § 552 (1977).[3] The Court of Appeals also explained that under *Restatement (Second) of Torts* § 552, although the accountant must have actual knowledge that the information that it supplies will be supplied to a limited group of persons for the purpose of influencing those persons, "there is no requirement that the accountant know the precise identity of the third party . . . ." *ML-Lee*, 463 S.E.2d at 627. According to the South Carolina Court of Appeals, "the *Restatement* approach represents the soundest method of determining the scope of an accountant's duty to third persons for negligent misrepresentation" because it "balances the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking." *Id.* at 627 (internal quotation marks omitted). On a writ of *certiorari* to the South Carolina Supreme Court in the same case, the South Carolina Supreme Court expressly adopted "the § 552 standard of liability for the reasons set forth in the Court of Appeals' decision." *ML-Lee*

---

[3]Factually, *ML-Lee* involved an investment partnership that allegedly relied upon a professionally audited financial report and professionally audited financial statements of a textile company in making significant investments in the textile company. *ML-Lee*, 463 S.E.2d at 622-24. The financial report and financial statements at issue had been audited by a professional accounting firm retained by the textile company. *Id.* at 629. When the accounting firm prepared the audited financial report and financial statements, it knew that the textile company intended to use the documents to lure potential investors. *Id.* at 629-630. The financial statements overstated the textile company's inventory, which in turn caused the financial report to overstate the financial condition of the company. *Id.* at 623, 630 n.11.

*Acquisition Fund v. Deloitte & Touche*, 489 S.E.2d 470, 471 n.3 (S.C. 1997).

Notably for our purposes, Comment b. to *Restatement (Second) of Torts* § 552 provides that "[t]he rule stated in this Section applies not only to information given as to the existence of facts *but also to an opinion given upon facts* equally well known to both the supplier and the recipient." *Restatement (Second) of Torts* § 552, cmt. b. (1977) (emphasis added). To be sure, the alleged negligent misrepresentations in *ML-Lee* did not involve expressions of opinion, but rather involved misstatements of fact. Accordingly, neither court had occasion to address Comment b. to *Restatement (Second) of Torts* § 552 in *ML-Lee*.

Such circumstance, however, far from keeps us in the dark about how the South Carolina Supreme Court would rule if presented with the issue before us. First, common sense tells us that if the South Carolina Supreme Court was comfortable in adopting the *Restatement (Second) of Torts* § 552 with respect to the liability of a professional accounting firm to a third party in the context of a misrepresentation of fact negligently supplied for the guidance of others, the court, if presented with the opportunity, would not hesitate to adopt Comment b. to § 552 with respect to the liability of a professional real estate appraisal firm to a third party in the context of a negligent appraisal of a parcel of real property supplied for the guidance of others. After all, Comment b. is the drafters of the *Restatement (Second) of Torts*' considered explanation of when § 552 applies to a particular fact pattern. Moreover, as with accountants, the *Restatement (Second) of Torts*' approach represents the soundest method of determining the scope of a professional real estate appraiser's duty to third persons for negligent misrepresentation because it balances the need to hold professional real estate appraisers to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.

Next, *dicta* in another decision by the South Carolina Court of Appeals, namely *AMA Management Corp. v. Strasburger*, 420 S.E.2d 868 (S.C. Ct. App. 1992), suggests that if faced with the facts of the present case, that court would adopt Comment b. to *Restatement (Second) of Torts* § 552. In *AMA*, the plaintiff, a sophisticated commercial

entity, brought a negligent misrepresentation claim against another sophisticated commercial entity. *AMA*, 420 S.E.2d at 870. The plaintiff alleged that the defendant, via one of its contract negotiators, negligently misrepresented that certain loan guarantees that it was offering for purchase were "good." *Id.* at 875. Before disposing of the claim on the basis that the plaintiff had failed to prove that the alleged misrepresentation was false when made, and alternatively on the basis that the plaintiff's reliance on the alleged misrepresentation was not reasonable under the circumstances, *id.*, the court stated in *dicta* that although a "mere statement of opinion, commendation of goods or services, or expression of confidence that a bargain will be satisfactory does not give rise to liability in tort, . . . if the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make careful enquiry, the law places on him a duty of care with respect to representations made to plaintiff," *id.* at 874. This language is fully consistent with Comment b. to *Restatement (Second) of Torts* § 552.

Collectively, the indicators that we have just set forth, along with the absence of contrary indicators, prompt us to hold that the South Carolina Supreme Court would adopt Comment b. to *Restatement (Second) of Torts* § 552 and hold a professional appraiser liable to a third party for negligent misrepresentation under South Carolina common law in the event the third party detrimentally relied upon the professional appraiser's materially inaccurate and negligent appraisal of the "as is" market value of a parcel of real property.[4] Finally, we cau-

---

[4]We expressly reject the Defendants' argument that the South Carolina Court of Appeals' opinion in *Koontz* requires that we reverse. In *Koontz*, the plaintiff asserted that the architectural firm that he had hired to build him a new home had induced him to enter into a contract with it by way of the following representations: (1) the construction phase of the project could be completed for $400,000; (2) the design phase could be completed in a reasonable time; and (3) the architect's fees for services rendered would not be excessive. *Koontz*, 511 S.E.2d at 412. The South Carolina Court of Appeals characterized these alleged misrepresentations as representations related to future events, and therefore, not actionable as negligent misrepresentations. *Id.* at 413. Relevant for our purposes, the court did not characterize the statements as ones of professional opinion nor consider the applicability of Comment b. to *Restatement (Second) of*

tion that we do not intend our holding to expose a professional appraiser to liability for an appraisal of the "as is" market value of a parcel of real property that is materially inaccurate, but nonetheless had been formulated with due care.

### IV.

Alternatively, the Defendants seek reversal on the basis that the evidence before the jury that Private Mortgage justifiably relied upon the Appraisal Report in purchasing the Cypress Creek Note and Mortgage was insufficient as a matter of law. In this regard, the Defendants argue that Private Mortgage cannot establish justifiable reliance because the Appraisal Report states in several places that the house on the Property was to be operated as a bed and breakfast, not that it was actually operating as a bed and breakfast.

The Defendants' alternative basis for reversal fares no better than their first. Critically, although the Appraisal Report stated that approximately $50,000 worth of improvements to the house were needed in order for the Property to operate as a bed and breakfast, the Appraisal Report clearly stated that the "as is" market value of the Property reflects the market value of the Property without these improvements. Moreover, the record shows that Private Mortgage's president, Chuck Cefalu, testified at length at trial that Private Mortgage heavily relied on the "as is" market value of the Property as stated in the Appraisal Report in deciding to purchase the Cypress Creek Note and Mortgage for $200,000. For these reasons, we reject the Defendants' challenge to the sufficiency of the evidence of justifiable reliance.

### V.

For the reasons stated, we affirm the judgment of the district court in favor of Private Mortgage.

*AFFIRMED*

---

*Torts.* The *Koontz* case is simply a straightforward application under unremarkable facts of the general rule that in order to be actionable as a negligent misrepresentation, the misrepresentation must relate to a present or preexisting fact that is false when made. *Koontz*, 511 S.E.2d at 413.