**EATON CORPORATION, Plaintiff,**

v.

**TRANE CAROLINA PLAINS,**
**Defendant.**

No. 2:03–3451–23.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 4, 2004.

**700**

James William Logan, Jr., Logan Jolly and Smith, Anderson, SC, for Plaintiff.

John E. Schmidt, III, Nelson Mullins Riley and Scarborough, Columbia, SC, for Defendant.

### ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant Trane Carolina Plains' ("Trane") Motion for Partial Summary Judgment. For the reasons set forth herein, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Eaton Corporation ("Eaton") purchased four air conditioning units from Trane[1] in 1998. Pursuant to a service agreement re-negotiated yearly between Eaton and Trane, Trane has been responsible for servicing these units since that time. The service agreement simply provided that "The Trane Company … agrees to furnish services in accordance with the 'General Terms and Conditions' and attached 'Schedules.'" (Def.Mem., Ex. A).

Between March 21 and March 31, 2003, Trane's employees serviced the units. On March 31, Trane's employees "inspected [the] units," "changed [the] filters/belts," and "made [a] material list for repairs." (Pl.Mem., Ex. 1). On April 3, 2003, a fire occurred at Eaton's facility, and caused extensive damage to the units and the facility. Eaton alleges that the fire originated in the electric motor of one of the units, and that Trane's faulty servicing of the units caused the fire. Eaton asserts claims for breach of contract ("Count One"), negligence ("Count Two"), breach of an express warranty ("Count Three"), and breach of the implied warranty of workmanship ("Count Four").

## II. STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

**1.** Trane is apparently incorrectly identified in the Complaint as Trane Carolina Plains. In-

stead, Trane is "an operating division of American Standard, Inc." (Def. Mem. at 1).

242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## III. DISCUSSION

Trane seeks partial summary judgment on three bases. First, Trane argues that Eaton's claim for negligence is barred because the parties' relationship was strictly contractual in nature. (Def. Mem. at 3). Second, Trane seeks summary judgment on each of Plaintiff's claims to the extent that they seek recovery for incidental or consequential damages, as the contract, in Trane's opinion, prohibits these forms of relief. Finally, Trane argues that Eaton's claim for breach of the implied warranty of workmanship is flawed because the contract disclaims such warranties. Eaton concedes that its implied warranty claim is subject to dismissal, but argues that it is not barred from pursuing a negligence claim or incidental and consequential damages. The court addresses these two grounds for summary judgment in turn.

### A. Eaton's Negligence Claim and The Economic Loss Doctrine

Trane first argues that Eaton cannot pursue its negligence claim because the parties' relationship is purely contractual in nature, and consequently, Eaton is precluded from seeking recovery based in tort. Eaton counters that this so-called "economic loss doctrine" does not apply to bar its negligence claim because (1) the doctrine does not apply where the damage complained of is to property other than the product; (2) the doctrine does not apply where a defendant owes a duty independent of the contract; and (3) the doctrine does not apply to contracts for services. (Pl. Mem. at 6). The court begins its analysis with Eaton's final two arguments.

The economic loss rule bars a negligence action "where duties are created *solely* by contract." *Kennedy v. Columbia Lumber and Mfg. Co., Inc.*, 299 S.C. 335, 384 S.E.2d 730, 737 (1989). The *Kennedy* court explained the economic loss rule as follows

This rule exists to assist in determining whether contract or tort theories are applicable to a given case. Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic losses." Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort

or contract. This is so, ... because his losses are more than merely "economic." *Kennedy,* 384 S.E.2d at 736. As Eaton points out, however, "[w]here there is a special relationship between the parties that is independent of the contract, ... there exists a duty of care whose breach will support a tort action." *See Palmetto Linen Service, Inc. v. U.N.X., Inc.,* 205 F.3d 126, 129 (4th Cir.2000); *see also Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.,* 320 S.C. 49, 463 S.E.2d 85, 88 (1995). For example, South Carolina courts have permitted negligence actions to proceed against builders, engineers, and lawyers based on their professional duties to plaintiffs. *See Tommy L. Griffin,* 463 S.E.2d at 89; *Lloyd v. Walters,* 276 S.C. 223, 277 S.E.2d 888 (1981). The reason for allowing these actions is that in certain circumstances, an individual may have breached an independent legal duty owed to the plaintiff which does not arise from the contract. *See, e.g., Tommy L. Griffin,* 463 S.E.2d at 89 ("We see no logical reason to insulate design professionals from liability when the relationship between the design professional and the plaintiff is such that the design professional owes a professional duty to the plaintiff arising separate and distinct from any contractual duties between the parties...."); *Kennedy,* 384 S.E.2d at 737 ("If a builder performs construction in such a way that he violates a contractual duty *only,* then his liability is only contractual. If he acts in a way as to violate a legal duty, however, his liability is both in contract and in tort.").

Often, the distinction between claims which sound in tort and those which sound in contract is unclear. This is especially true in situations such as the matter *sub judice,* where the parties' relationship initially is formed by contract, but where one party later raises a claim that the contract was performed negligently. As the South Carolina Supreme Court stated in *Tommy L. Griffin,* whether a duty separate and distinct from the contract exists "will depend on the facts and circumstances of each case." 463 S.E.2d at 89. Thus, the inquiry must focus on "whether the duties [Eaton] alleges in [its] ... negligence cause of action arise from the parties' contract or independently therefrom." *Koontz v. Thomas,* 333 S.C. 702, 511 S.E.2d 407, 412 (App.1999).

Here, Eaton alleges two bases which could establish the existence of a special relationship outside of the contract. First, Eaton argues that Trane owed a duty to use due care in performing service and maintenance to the air conditioning units in question. (Compl.¶ 12). While the contract between the parties bound Trane to perform routine service on Eaton's air conditioning units, the duties alleged by the negligence cause of action in Eaton's complaint arise from the independent principle of tort law that one must exercise due care in the provision of maintenance and service. *See, e.g., William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 602 (2d Cir.1989) ("defendants held themselves out as experts[,] ... they were required to act with due care[,] and thus their liability arises out of a duty imposed by law."). Thus, the negligence claims here do not arise from specific provisions of the contract. *Cf. Koontz,* 511 S.E.2d at 412 (holding that the purported negligence claims were "veiled" contract claims when the claims merely alleged breaches of specific provisions of the parties' agreement).

Second, Eaton alleges that Trane breached "at least one prevailing industry standard" in performing its contractual duties. (Pl. Mem. at 8). The breach of an industry standard may establish that a special duty outside of the contract exists, and thus prevent application of the eco-

nomic loss rule. *See Kennedy*, 384 S.E.2d at 737 (holding that violation of a building code breaches a legal duty for which a builder can be held liable in tort for proximately caused losses); *see also Palmetto Linen*, 205 F.3d at 129; *Bennett v. Ford Motor Co.*, 236 F.Supp.2d 558, 562 (D.S.C. 2002) (noting that the economic loss doctrine might not be applicable because an automobile manufacturer has a special duty to produce vehicles free of defects, and because of a potential breach of industry standards). While Trane counters that Eaton has not yet identified an industry standard to support an alleged independent special relationship, the court notes that summary judgment motions and replies were filed several weeks prior to the expiration of discovery in this case. Accordingly, as Eaton suggests, granting summary judgment in Trane's favor on the basis that no breach of an industry standard occurred would be premature. *See Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. 2505 ("[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."). Moreover, as cited above, the question of whether a special relationship exists is a heavily fact-dependent inquiry, and renders the issue inappropriate for summary judgment. *See, e.g., Cullum Mechanical Constr., Inc. v. South Carolina Baptist Hospital*, 344 S.C. 426, 544 S.E.2d 838, 842

(2001) (holding that the trial court erred in granting summary judgment because "it is a factual issue whether these circumstances give rise to a special relationship between Architect and Cullum, which would give rise to a duty on the part of Architect.").

Finally, the court notes that while "the doctrine of economic loss is continually expanding, and is not as inviolate as it once was[,]" see *Bennett*, 236 F.Supp.2d at 562, the contours of the doctrine remain far from clear. In particular, the question of whether the doctrine even applies to service contracts remains largely unanswered. While the court cannot identify any relevant South Carolina law addressing this issue,[2] numerous other states have held that if the contract is one for services, the economic loss doctrine does not apply, and a negligence claim is permissible. *See, e.g., Official Committee of Unsecured Creditors of Corell Steel v. Fishbein and Company, P.C.*, 1992 WL 196768 at *5–6 (E.D.Pa. Aug.10, 1992); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 725 F.Supp. 656, 660 (N.D.N.Y.1989) (holding that New York precedent "can reasonably be construed as standing for the proposition that the negligent performance of a *contract for services* states a cause of action in tort under New York law") (emphasis added); *Consolidated Edison Co. of New York, Inc. v. Westing-*

---

**2.** In *Palmetto Linen*, the Fourth Circuit, applying South Carolina law, rejected the Plaintiff's argument that the economic loss rule did not apply to a contract for the provision of services. However, the court's ruling was not based on the legal premise that both contracts for services and contracts for the sale of goods are equally subject to the economic loss rule. Rather, the Fourth Circuit's holding relied on the fact that the "predominant thrust of this transaction was to provide the chemicals and equipment." 205 F.3d at 129. The court reasoned that "[a]ny services involved in the transaction, such as the design

and maintenance of the equipment, were merely incidental to the sale of goods." *Id.* Here, the inquiry is quite different, as the "predominant thrust"—in fact, the entirety—of the parties' contract was for the servicing and maintenance of the air conditioning units at Eaton's facility. *See* Def. Mem., Ex. A ("The Trane Company ... agrees to furnish *services* in accordance with the 'General Terms and Conditions' and attached 'Schedules.' "). Accordingly, the court does not believe that *Palmetto Linen* dictates how South Carolina law applies to a pure contract for the provision of services.

*house Elec. Corp.*, 567 F.Supp. 358, 364 (S.D.N.Y.1983) (recognizing an exception to the economic loss rule for service contracts because a cause of action is recognized under New York law for negligent performance of contractual services); *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis.2d 395, 573 N.W.2d 842, 851–852 (1998) (recognizing the distinction between cases arising out of the negligent provision of services and cases involving defective products, and expressly reserving the issue of "whether the [economic loss] doctrine applies with equal force to damages resulting from the provision of services."); *Wolfram v. S.K. Financial Services, Inc.*, 1996 WL 70308, *3 (Minn. Ct.App.1996) (holding that "Minnesota courts follow [the economic loss doctrine] only in part, limiting damages for negligent actions committed in the sale of goods, but refusing to apply this rule to contracts involving the provision of services."); *McCarthy Well Co. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 314–15 (Minn.1987) (recognizing the U.C.C.'s remedy provisions preclude an action for commercial negligence when the loss is purely economic, but refusing to apply this limitation to service contracts); *Congregation of Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 514 (1994) ("The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his

clients."). The court hazards to guess whether South Carolina courts would carve out an exception to the economic loss doctrine for service contracts, but notes that the distinction could be meaningful, and at the very least provides additional fodder for the court's decision to deny Defendant's motion for partial summary judgment on Eaton's negligence claim.[3]

## B. Incidental and Consequential Damages

Neither party disputes that the "General Terms and Conditions" attached to the service agreement constitute a valid and binding portion of the contract between them.[4] In those General Terms and Conditions, the parties agreed to the following provision:

9. Indemnity and Liability. Trane and Customer shall indemnify, defend, and hold each other harmless from any and all claims, actions, costs, expenses, damages, and liabilities, including reasonable attorney's fees, resulting from death or bodily injury or damage to real or personal property, to the extent caused by the negligence or misconduct of the indemnifying party, and/or its respective employees or agents. If the parties are both at fault, the obligation to indemnify shall be proportional to their respective fault. The duty to indemnify will continue in full force and effect, notwithstanding the expiration or early termination hereof, with respect to any claims based

3. The court refrains from addressing Eaton's argument that the economic loss doctrine does not apply because the damage here was to its entire facility and not just the product itself. The court finds sufficient reason to deny summary judgment without reaching the merits of this argument.

4. While Eaton does not explicitly state that it agrees with this proposition, Eaton's acknowledgment that its implied warranty of

workmanship claim fails is premised on the fact that such claims are barred by the "General Terms and Conditions." Accordingly, Eaton implicitly admits that the "General Terms and Conditions" is an enforceable contract between the parties. Further, Eaton's representative testified that she intended to bind Eaton to the General Terms and Conditions. (Lynch Dep. at 13).

on facts or conditions that occurred prior to expiration or termination. NOTWITHSTANDING ANY CONTRARY PROVISION, NEITHER PARTY SHALL BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHETHER CLAIMED UNDER CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY OR ANY OTHER LEGAL THEORY OR FACTS.

(Def.Mem., Ex. A) (hereinafter "Paragraph Nine"). Trane argues that this language bars Eaton's request for consequential and incidental damages on each of its causes of action. Eaton counters that this disclaimer "is found only in the Indemnity provision of the Terms and Conditions . . . and clearly applies only to a cause of action for indemnity. . . ." (Pl. Mem. at 5).

■ "Under South Carolina Code § 36–2–719, parties may contractually modify or limit the recovery of consequential or incidental damages, provided the limitation is not unconscionable." *See Triple E, Inc. v. Hendrix and Dail, Inc.*, 344 S.C. 186, 543 S.E.2d 245, 248 (App.2001). Accordingly, where a proper exclusion of consequential and incidental damages is contractually agreed to, a plaintiff's remedy is limited by the terms of that exclusion. *See, e.g., Hill v. BASF Wyandotte Corp.*, 696 F.2d 287, 292 (4th Cir.1982) (holding that the district court erred in allowing the jury to award consequential damages in the face of an express limitation of remedies).

As a threshold matter, Eaton's argument that the limitation of remedies provision only applies to claims for indemnity is wholly unavailing. The section of the General Terms and Conditions is titled "Indemnity *and Liability*." (Def. Mem., Ex.

A ¶ 9). Accordingly, Paragraph Nine concerns both claims for indemnity and the respective liabilities of the parties. As well-stated by Defendant Trane, "[t]he claims asserted by Eaton in this matter seek to impose liability on Trane for acts or omissions covered by the Service Agreement and thus paragraph nine is applicable to the present dispute." (Def. Reply at 1–2).

■ In addressing liability, Paragraph Nine, in unmistakable and bolded terms, states that neither party is liable for incidental or consequential damages under any legal theory. Thus, because the language is unambiguous, the limitation of remedies is enforceable unless limiting damages in this manner is unconscionable. *See, e.g., Laidlaw Environmental Services, (TOC), Inc. v. Honeywell, Inc.*, 966 F.Supp. 1401, 1412–1413 (D.S.C.1996). Various factors guide the court in determining the unconscionability of excluding incidental and consequential damages, including (1) the nature of the injuries suffered by [Eaton]; (2) whether [Eaton] is a substantial business concern; (3) disparity in the parties' bargaining power; (4) the parties' relative sophistication; (5) whether there is an element of surprise in the exclusion; and (6) the conspicuousness of the clause. *See Myrtle Beach Pipeline Corp. v. Emerson Electric Co.*, 843 F.Supp. 1027, 1046 (D.S.C.1993).

■ Here, the limitation of remedies provision is not unconscionable for a number of reasons.[5] First, Eaton's injuries are entirely commercial in nature and do not involve personal injury. *See* S.C.Code Ann. § 36–2–719(3) ("Limitation of consequential damages for injury to the person in the case of consumer goods is prima

---

5. Plaintiff does not argue that the limitation of remedies provision is unconscionable, but the court addresses this issue nonetheless.

facie unconscionable but limitation of damages where the loss is commercial is not."); *Myrtle Beach Pipeline,* 843 F.Supp. at 1046 (the fact that no personal injury is alleged is "significant under the Code because while limitations on damages for personal injuries are not favored ... no such prejudice applies to property losses.") (internal quotations omitted). Second, Eaton is a substantial business concern that negotiated at arm's length with Trane, another sophisticated party. *See, e.g. Laidlaw,* 966 F.Supp. at 1414; *Myrtle Beach Pipeline,* 843 F.Supp. at 1047. Moreover, there was no surprise regarding the limitation of remedy. Since the inception of the contract, Trane has made clear that it agreed to furnish services "in accordance with the General Terms and Conditions," which included the conspicuous—in bolded, large capital letters—limitation of remedies provision. *Id.* On the whole, the court cannot conclude that the limitation of remedy provision resulted from "the oppressive nature of the terms of the contract as well as the lack of sophistication of the parties in striking their agreement." *Myrtle Beach,* 843 F.Supp. at 1046. Accordingly, Defendant's motion for summary judgment is granted as to incidental and consequential damages.[6]

## IV. CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons that Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART and DENIED IN PART.** Defendant's Mo-

tion for Partial Summary Judgment is **GRANTED** with respect to Count Four (Implied Warranty of Workmanship) of the Complaint. Defendant's Motion for Partial Summary Judgment is **DENIED** as to Count Two (Negligence). Finally, Defendant's Motion for Partial Summary Judgment ·is **GRANTED** as to any claim by Plaintiff for incidental or consequential damages.

**AND IT IS SO ORDERED.**

---

**6.** The court is somewhat confused by Plaintiff's alternative argument. Plaintiff argues that "[e]ven if the language quoted by Defendant applies beyond an indemnity cause of action, the damages sought by Plaintiff are *direct* and are thus not precluded by the agreement." (Pl. Mem. at 5). However, in Plaintiff's complaint, each cause of action seeks "damages of an actual, incidental, con-

sequential, and special nature ... in an amount in excess of $2,500,000." The court makes no ruling on Plaintiff's request for actual damages, and at this point, makes no judgment on what constitutes actual damages. *The court merely holds that Plaintiff is barred from recovering whatever portion of its claimed damages that are properly classified as incidental or consequential.*