PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KIMBERLY BABCOCK,
                    *Plaintiff-Appellee,*

v.

BELLSOUTH ADVERTISING AND
PUBLISHING CORPORATION,
                    *Defendant-Appellant.*

No. 02-1791

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-00-3802-3)

Argued: May 8, 2003

Decided: October 28, 2003

Before WILKINS, Chief Judge, and GREGORY and
SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in
which Chief Judge Wilkins and Judge Gregory joined.

## COUNSEL

**ARGUED:** Steven T. Breaux, BELLSOUTH CORPORATION,
Atlanta, Georgia, for Appellant. Palmer Freeman, Jr., Columbia,
South Carolina; Richard Donald Ries, Columbia, South Carolina, for
Appellee.

**OPINION**

SHEDD, Circuit Judge:

Kimberly Babcock sued her former employer, BellSouth Advertising and Publishing Company ("BellSouth"), for terminating her employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54. A jury returned a verdict in Babcock's favor and awarded her more than $91,000 in damages. BellSouth appeals from the judgment entered on the jury's verdict, arguing that Babcock was not eligible for FMLA protection as a matter of law. Because the jury could reasonably conclude that Babcock was an "eligible employee" under the FMLA and that she otherwise satisfied the requirements for protection under that statute, we affirm the judgment of the district court.

I.

Beginning on June 1, 1999, Babcock worked for BellSouth as an outside sales representative selling yellow pages advertisements.[1] In April 2000, Babcock began experiencing various health problems, including headaches, dizziness, sinus trouble, exhaustion, and depression. In mid-May, Babcock's physician reported that an earlier physical examination showed early stages of cancer. In light of these medical problems, Babcock's physician suggested that she take some time off from work.

After attempting — unsuccessfully — to resume her normal duties at the office, Babcock finally decided on May 18 that she would heed her physician's advice and take time off from work. Babcock consulted with a union representative and then went to her supervisor, who promptly called Polly Hall, a benefits case manager at BellSouth in Atlanta. Babcock told Hall that she was ill and needed to go on short-term disability leave. Hall instructed Babcock to have her physi-

---

[1]In reviewing the district court's denial of BellSouth's renewed motion for judgment as a matter of law, we take the facts presented at trial in the light most favorable to Babcock, the nonmoving party. *See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 311-12 (4th Cir. 2002).

cian complete the required paperwork and fax it back to Hall in Atlanta. Babcock left work later in the day on May 18.

On May 22, Babcock called her supervisor to let her know that her physician was recommending six weeks of leave from work. Four days later, Hall called Babcock to inquire about the status of the paperwork that BellSouth needed from her physician; Babcock reported that her physician had the form and would be faxing it to Hall any time. Babcock's physician certified on May 30 that he had diagnosed Babcock with depression, irritable bowel syndrome, and headaches. He further stated that Babcock would be able to return to work in six weeks. Thinking that she had been approved for six weeks of leave, Babcock left town on May 30 and did not return home until June 9.

When she returned home, Babcock found letters from Hall dated June 2 and June 7. These letters indicated that (1) BellSouth would only approve short-term disability leave through May 27 based on the information provided by Babcock's physician; (2) Babcock should return to work no later than June 9; and (3) if Babcock did not return to work by that date, she could be subject to discipline, including termination.

Babcock called Hall on June 9 to discuss her situation. Hall explained that she could only approve short-term disability leave through May 27 based on the information that Babcock's physician provided. When Babcock requested more leave time, paid or unpaid, Hall told her that she was not eligible for protection under the FMLA because she had not worked for the company for twelve months before her leave began. Hall believed that Babcock's leave began on May 19.

Babcock did not return to work after making her request on June 9, and BellSouth terminated her employment on June 14. According to BellSouth, the termination was based on Babcock's "misconduct consisting of unexcused absence (i.e. failure to substantiate or provide sufficient medical information regarding her absence and failure to return to work)."

Babcock sued BellSouth in South Carolina state court, claiming that BellSouth terminated her employment in violation of the FMLA.

BellSouth removed the case to federal court and moved for summary judgment, arguing that Babcock was not an "eligible employee" under the FMLA because she had not been employed by BellSouth for twelve months before the commencement of her medical leave. The district court denied the motion, and the case proceeded to trial. The jury returned a verdict in favor of Babcock and awarded her $91,913 in lost wages and benefits; the district court entered judgment on that verdict. BellSouth filed a motion pursuant to Fed. R. Civ. P. 50(b) renewing its motion for judgment as a matter of law, but the district court denied the motion. This appeal followed.

II.

We review *de novo* the district court's denial of BellSouth's Rule 50(b) motion for judgment as a matter of law, viewing the evidence in the light most favorable to Babcock, the nonmoving party. *See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 311-12 (4th Cir. 2002). Judgment as a matter of law is appropriate only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).

Congress enacted the FMLA in response to growing concerns about "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." *Miller v. AT&T*, 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted). Indeed, it is an expressed purpose of the statute to "entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2)-(3). *See also Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir. 1999) (describing the purpose of the FMLA to "balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions").

To effect this purpose, the FMLA guarantees an "eligible employee" twelve workweeks of leave each year "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA further provides that the taking of such leave "shall not result in the loss of any employment benefit accrued

prior to the date on which the leave commenced." *Id.* § 2614(a)(2). An employee may sue to recover damages or equitable relief when her employer "interfere[s] with, restrain[s], or den[ies] the exercise or attempt to exercise" the rights guaranteed by the statute. *Id.* §§ 2615(a)(1), 2617(a)(2).

There is no dispute that Babcock suffered from a serious health condition that left her unable to perform her duties. Nor is there any dispute that BellSouth terminated Babcock's employment because she took time off from work on account of this health condition. Thus, the sole issue presented in this appeal is whether Babcock could prove that she was an "eligible employee" under the FMLA, entitled to protection against termination for taking time off due to her medical problems.

The statute defines "eligible employee" as "an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12 month period." *Id.* § 2611(2)(A).[2] The question in this case is whether Babcock had been employed for at least twelve months. The determination whether an employee has been employed by the employer for at least twelve months must be made "as of the date leave commences." 29 C.F.R. § 825.110(d).[3]

BellSouth contends that Babcock was not an "eligible employee" because her "leave" commenced on May 19 and continued through the date of her termination. She was absent from work on May 19 and never returned. Thus, according to BellSouth, there was only one

---

[2]The definition of "eligible employee" also contains two exclusions, 29 U.S.C. § 2611(2)(B), neither of which applies in this case.

[3]The FMLA itself does not indicate when the determination for eligibility should be made, and we conclude that the Secretary of Labor's regulation is reasonable in light of the purpose of the statute. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) (noting that regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"); *Miller*, 250 F.3d at 833 (stating that "so long as the regulations promulgated by the Secretary are reasonable, we are not at liberty to question their wisdom").

leave period, and it began on May 19 — *before* Babcock had worked for BellSouth for one year. Babcock argues, however, that the relevant "leave" commenced on June 9 — *after* her one-year anniversary with BellSouth — when she made a request for unpaid medical leave and did not return to work.

"Leave" is not specifically defined in the statute, so it should carry its ordinary dictionary meaning. *See Minter v. Beck*, 230 F.3d 663, 666 (4th Cir. 2000). In the employment context, "leave" means "an *authorized* absence or vacation from duty or employment." *Webster's Third New Int'l Dictionary* 1287 (1976) (emphasis added). An employee's absence from work for medical reasons might be authorized by the employer's own leave policies, the FMLA, or both.

It is undisputed that Babcock's absence from work from May 19 through May 27 was authorized by BellSouth's own policies, specifically its short-term disability leave policy. It is also undisputed that BellSouth cut off this short-term disability leave on May 27 and demanded that Babcock return to work no later than June 9. According to BellSouth's own documents, Babcock's failure to return to work by that date could result in termination. Thus, from May 27 through June 9, Babcock was an employee on an unexcused absence.[4] BellSouth's position that Babcock was on leave during this period is simply untenable. An employee cannot be both on leave and on an unexcused absence at the same time.

We agree with BellSouth that Babcock was not entitled to FMLA coverage for the leave period from May 19 to May 27. Although Babcock made a request sufficient to invoke the FMLA,[5] she was not an "eligible employee" at that time because she had not yet been employed by BellSouth for twelve months. When Babcock requested additional, unpaid medical leave on June 9, however, her initial leave

---

[4]Even at oral argument, counsel for BellSouth described Babcock's status after May 27 as "an employee on unexcused absence" and "on no approved leave of absence."

[5]An employee need not mention the FMLA by name in order to invoke its protections; the employee need only make the employer aware that leave is required for a purpose covered by the FMLA. *Rhoads v. FDIC*, 257 F.3d 373, 383 (4th Cir. 2001); 29 C.F.R. §§ 825.302(c), 825.303(b).

period had ended and her one-year anniversary of employment had passed. The jury could reasonably conclude that Babcock was, on that date, an "eligible employee" who suffered from a serious health condition that left her unable to perform her ordinary duties.[6] The FMLA authorized her absence from work, and the company could not terminate her employment for taking such leave.

III.

Through the FMLA, Congress gave Babcock certain protections once she passed the one-year mark at BellSouth. Having allowed Babcock to remain employed for more than one year, and having cut off her short-term disability leave, BellSouth cannot now avoid its responsibilities under the statute. The jury found that Babcock was eligible for leave under the FMLA, that her absence from work was caused by a serious health condition, and that she was fired because of her absence from work. There was ample evidence in the record — taken in the light most favorable to Babcock — to support this verdict, and BellSouth was not entitled to judgment as a matter of law. Accordingly, the judgment of the district court is

*AFFIRMED.*

---

[6]BellSouth cannot be heard to complain that Babcock took advantage of her unexcused absence to become eligible for FMLA protection. Babcock's employment status at all times prior to her one-year anniversary on June 1 was determined by BellSouth, the party with superior knowledge of its employees' FMLA eligibility. (Indeed, Hall's testimony indicated that she was aware of the date on which Babcock would become eligible for FMLA coverage.) So far as the FMLA is concerned, BellSouth was free to take whatever disciplinary action it deemed appropriate (and permissible under its collective bargaining agreement) in response to Babcock's unexcused absence. BellSouth chose to keep Babcock on the payroll beyond the one-year anniversary that triggers FMLA eligibility.