**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-2031**

———————

ST. PAUL FIRE & MARINE INSURANCE COMPANY, as
subrogee of A.G. Van Metre Services,
Incorporated,

                                    Plaintiff - Appellee,

        versus


WITTMAN MECHANICAL CONTRACTORS, INCORPORATED,

                                    Defendant - Appellant,

        and


MID-SOUTH BUILDING SUPPLY COMPANY, INCORPORATED;
DAE SOP YOON,

                                    Defendants.


———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Walter D. Kelley, Jr.,
District Judge.  (1:04-cv-01303-WDK)

———————

Argued:  November 1, 2007          Decided:  February 6, 2008

———————

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

———————

Vacated and remanded with instructions by unpublished per curiam
opinion.

———————

Francis Joseph Prior, Jr., SICILIANO, ELLIS, DYER & BOCCAROSSE, Fairfax, Virginia, for Appellant.  Jim H. Fields, Jr., COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On the morning of January 12, 2004, Wittman Mechanical Contractors, Inc., the mechanical subcontractor on a new house under construction in Loudoun County, Virginia, activated a propane gas line feeding the gas system in the house and turned on the furnace. Approximately one hour later, an explosion occurred, destroying the house. Experts concluded that the explosion resulted from a gas leak at the connection between the main gas pipeline in the basement and the spur gas pipeline running up to the kitchen island cooktop on the first floor.

Under the "scope of work" provision in the contract between Wittman Mechanical and the general contractor, Wittman Mechanical was responsible for installing and starting up the furnace, but it was not responsible for installing the gas pipeline system or testing it for leaks before the system was activated. Nonetheless, Wittman Mechanical activated the gas pipeline system at the request of the general contractor and, before activating the system, did not test for leaks in the system.

The general contractor's insurance company, St. Paul Fire & Marine Insurance Company ("St. Paul Insurance") paid the loss and then commenced this subrogation action against Wittman Mechanical, alleging breach of warranty and negligence in activating the gas system and starting the furnace without testing for leaks.

3

Following a three-day trial, a jury found in favor of Wittman Mechanical on both claims. The district court, however, granted St. Paul Insurance's post-trial motion for judgment notwithstanding the verdict, concluding that Wittman Mechanical breached its express warranties by failing to perform a pressure test for leaks. The court thus entered judgment in favor of St. Paul Insurance for $445,685, plus interest.

We conclude on appeal that based on the "scope of work" clause in the subcontract between Wittman Mechanical and the general contractor, Wittman Mechanical was responsible only for a breach of warranty given in connection with installation of the furnace, which required Wittman Mechanical to perform a soap-and-water test[*] at the connection between the furnace and the gas line system, but not a pressure test on the entire gas pipeline system, which was required only of the contractor doing the gas pipeline work. Accordingly, we conclude that the jury could have concluded, based on the evidence at trial, that any failure by Wittman Mechanical to perform a soap-and-water test was not the cause of the explosion. We therefore vacate the judgment and remand to the district court with instructions to reinstate the verdict and enter judgment for Wittman Mechanical.

---

[*]A soap-and-water leak test is the familiar test used, for example, in checking bicycle tires for leaks. Soap and water is put on a suspected leak, and if bubbles occur, they indicate the site of a leak.

Wittman Mechanical was hired by Virginia Residential Construction, Inc., as a subcontractor to provide heating, ventilation, and air conditioning services to houses under construction in Loudoun County, including the house in question. Virginia Residential was a residential real estate developer in the Washington, D.C. metropolitan area and was the owner of and contractor for the house in question. The contract between Wittman Mechanical and Virginia Residential included a "scope of work" provision that required Wittman Mechanical to perform only the HVAC work, including the installation and starting of the furnace. But the contract did not include within the scope of the work any work related to installation and testing of the gas pipeline system. The contract provided that all gas pipeline work was to be performed by Peed Piping, another subcontractor retained by Virginia Residential.

After Peed Piping had initially installed the gas pipes in the house, Loudoun County inspectors performed an inspection of the pipes. This inspection required that all gas pipes in the house first be tied to an appliance, be capped off, or have a shut off valve. The county inspectors performed a pressure test to detect any leaks in the system by injecting a specified amount of air pressure into the pipes. Because the pipes held the pressure for 24 hours, the house's system passed inspection and was

approved in October 2003. Approximately three months passed, during which a spur gas line running from the main gas pipeline in the house's basement to the island cooktop in the kitchen became disconnected. It was at this connection between the main gas pipeline and the spur line from which gas leaked, causing the explosion on January 12, 2004.

On the morning of January 12, 2004, Robert Casteel and Lloyd Henry Dignazio, employees of Wittman Mechanical, arrived at the house to install brackets for air conditioning units. At some point during the morning, Virginia Residential's superintendent at the site, Russell Rolle, asked Casteel to start the furnace for warmth. By that time, Wittman Mechanical had already installed the furnace but had not started it up. After receiving permission from his supervisors at Wittman Mechanical, Casteel opened the line at the furnace to bleed out air that could prevent the furnace from starting. On doing this, he felt no pressure and smelled no gas, indicating to him that the line from the propane tank had not yet been activated. When Casteel advised Rolle of this fact, Rolle asked Casteel to activate the gas line leading from the propane tank to the house. This task, however, was one that did not fall within the scope of work for Wittman Mechanical. Nonetheless, feeling pressure from Rolle, Casteel called Wittman Mechanical's main office and asked permission to activate the line. Wittman Mechanical's operations manager authorized Casteel

6

to activate the line once he was informed that Rolle had assured Casteel that the gas pipeline system was ready to receive propane gas. Wittman Mechanical's operations manager testified at trial that he had assumed that, based on Rolle's request to activate the system and his assurance that the system was in good condition and ready to receive propane gas, Rolle was accepting responsibility for any adverse consequences that might arise from the activation of the system.

After conducting a visual inspection of the gas appliances in the house to confirm that the gas line valves were set in the off position, Casteel activated the propane gas line and started the furnace in the basement. In starting the furnace, Casteel did not perform any type of leak test, nor did he consult the manufacturer's instruction manual that came with the furnace itself, testifying that he had never done so. He also testified that he was not aware of any codes or industry standards that he was required to follow before or after turning on the gas and starting the furnace.

The explosion occurred approximately one hour after Casteel activated the gas line and started the furnace.

Following the explosion, St. Paul Insurance, who was the insurer of Virginia Residential, paid Virginia Residential's insurance claim and commenced this subrogation action against Wittman Mechanical for breach of warranty and negligence. After

the jury returned a verdict in favor of Wittman Mechanical on both claims, St. Paul Insurance moved for a judgment under Federal Rule of Civil Procedure 50, and the district court granted the motion, awarding St. Paul Insurance $445,685, with interest at 9 percent from January 12, 2004.

Wittman Mechanical filed this appeal.

II

A trial court may direct judgment as a matter of law only when there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of the non-moving party. Fed. R. Civ. P. 50(a)(1); Babcock v. Bell South Advertising & Publishing Corp., 348 F.3d 73, 76 (4th Cir. 2003). In considering to grant a motion as a matter of law, notwithstanding the verdict, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor without weighing the evidence or considering the witnesses' credibility. Baynard v. Malone, 268 F.3d 228, 234-35 (4th Cir. 2001). Stated otherwise, judgment as a matter of law can be granted only if the evidence "supports only one reasonable conclusion as to the verdict" under the governing law. Bank of Montreal v. Signet Bank, 193 F.3d 818, 831 (4th Cir. 1999).

Our review of a district court's grant of a Rule 50 motion applies the same standards de novo. Brown v. CSX Transportation, Inc., 18 F.3d 245, 248 (4th Cir. 1994).

8

In this case, the district court found as a matter of law that Wittman Mechanical breached its express warranty when it failed to conduct a leak test before or after starting the furnace. The court properly recognized that Wittman Mechanical could not have breached any warranty with regard to activating the gas pipeline system, because "the contract between [Virginia Residential] and Wittman Mechanical does not unambiguously cover propane gas piping and installation."

To find that Wittman Mechanical breached its warranties in connection with starting the furnace, the district court relied on the contract between Virginia Residential and Wittman Mechanical, in which Wittman Mechanical warranted its qualifications to perform the "Work," as defined in the contract; warranted it was familiar with and had sufficient knowledge of the "Work"; and warranted that its "Work" would be performed free of defects and in accordance with sound engineering standards, as well as standards of the industry.

The court also relied on the furnace manufacturer's installation manual, which directed that the installer "pressure test" the "piping system"; inspect the "entire [piping] system" before turning on the gas; and test "the piping system" for leakage after gas is "turned on into" the system. In connection with the particular task of installing the furnace, the furnace

manual provided a warning pertaining to "furnace start-up procedures" as follows:

> Never purge a gas line into a combustion chamber. Never use matches, candles, flame or other sources of ignition for the purpose of checking leakage. <u>Use a soap-and-water solution to check for leakage</u>. Failure to follow this warning can cause fire, explosion, personal injury, or death.

(Emphasis added).

The court concluded that "Wittman Mechanical breached the express warranties contained in the contract [with Virginia Residential] by failing to follow the practices and standards referenced in the contract and specified in the [furnace] installation manual and the National Fuel Gas Code." It concluded that "[h]ad Wittman Mechanical's workmen followed these practices -- specifically, conducting a leak test -- they would have discovered the leak and thus have avoided the explosion."

It is undisputed in this case that Wittman Mechanical did not conduct any leak test. Nonetheless, a question still remains whether its failure to conduct the appropriate leak test conclusively caused the explosion. The jury obviously found that Wittman Mechanical's failure to perform a leak test did not cause the loss, and it returned a verdict in favor of Wittman Mechanical. We find that the jury's verdict was reasonable and was supported by substantial evidence.

The duties contained in the furnace installation manual, as outlined by the district court, implied that the furnace

10

installation subcontractor was also the subcontractor installing the "gas pipe system" and therefore was responsible for testing and turning on the gas pipeline system. But, of course, in this case, as the district court appropriately recognized, the responsibilities were divided between Wittman Mechanical and Peed Piping. The "scope of work" assigned the responsibility of installing, testing, and activating the gas pipeline system to Peed Piping, and it assigned the responsibility of installing, testing, and starting up the furnace to Wittman Mechanical. When reading the furnace installation manual in the light of these divided responsibilities, it becomes apparent that the furnace manual required the furnace installer to do only a soap-and-water leak test at the furnace's connection with the gas pipe system, specifically warning the furnace installer not to conduct a pressure test. The pressure test was reserved for testing the entire system.

Reading from the furnace manual, which includes instructions relating to installation of the gas pipeline system as well as installation of the furnace, it states first with respect to the pipeline system:

> Piping should be pressure and leak tested in accordance with [the National Fuel Gas Code] . . . local, and national plumbing and gas codes <u>before</u> the furnace has been connected.

11

(Emphasis added).  But it states that after the furnace has been connected, the installer should perform a soap-and-water test where the furnace connects with the pipeline system:

> Never purge a gas line into a combustion chamber.  Never test for gas leaks with an open flame.  <u>Use a commercially available soap solution made specifically for the detection of leaks to check all connections</u>.  A failure to follow this warning could result in fire, explosion, personal injury, or death.

The manual goes on to repeat this statement as a warning, stating again to "[u]se a soap-and-water solution to check for leakage." Thus, while some portions of the furnace manual address the installation of a gas pipeline system, a task assigned to Peed Piping, other portions address installation and start-up of the furnace, which in this case was assigned to Wittman Mechanical.

While it is undisputed that Wittman Mechanical did not perform the soap-and-water test, it is also undisputed that had it performed this test, the test would not have detected the leak. The leak was at a location away from the furnace's connection to the system.  It was located where the main gas line connects with a spur gas line rising to the kitchen island.  Thus, the jury could well have concluded that Wittman Mechanical's failure to conduct the only test the manual required it to perform -- the soap-and-water test at the furnace connection -- did not cause the explosion.  It was, thus, error for the district court to have disregarded the jury verdict when evidence existed to support the verdict.

12

For similar reasons, the district court would not be able to grant judgment notwithstanding the verdict on the negligence claim. Even if it found that Wittman Mechanical was negligent in activating the gas system, as requested by Virginia Residential, the court would still have to recognize the possibility that the jury could have found Virginia Residential contributorily negligent in assuring Casteel that the system was ready to be activated, thus denying the possibility of its recovering from Wittman Mechanical. See Jenkins v. Pyles, 611 S.E.2d 404, 407 (Va. 2005) (citing Sawyer v. Comerci, 563 S.E.2d 748, 752 (Va. 2002)).

For the foregoing reasons, we vacate the judgment entered by the district court and remand this case to the district court with instructions to reinstate the verdict and to enter judgment in accordance with the reinstated verdict.

IT IS SO ORDERED.