UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1948

DAVID SCHWARTZ,

Plaintiff - Appellant,

v.

KENNETH BLUM; KENNETH BLUM, II; WILLIAM A. RICHTER,

Defendants – Appellees,

and

GRANT THORNTON LLP; SHULMAN, ROGERS, GANDAL, PORDY & ECKER,
Non-party recipient of Subpoena Duces Tecum,

Respondents.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:06-cv-02851-RDB)

Argued:  October 30, 2008          Decided:  January 29, 2009

Before TRAXLER and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed in part and vacated in part by unpublished per curiam
opinion.

**ARGUED:** Brian M. Maul, GORDON & SIMMONS, Frederick, Maryland,
for Appellant.  George W. Shadoan, SHADOAN, MICHAEL & WELLS,
LLP, Rockville, Maryland, for Appellees.  **ON BRIEF:** Roger C.
Simmons, GORDON & SIMMONS, Frederick, Maryland, for Appellant.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

David Schwartz appeals the order of the district court dismissing his action against his former business partners stemming from the sale of their company, Rent-A-Wreck of America, Inc., and its 2006 merger with MBFG, Inc. For the reasons that follow, we affirm the decision of the district court. We vacate as moot the district court's order granting summary judgment.

## I.

Schwartz founded Rent-A-Wreck of America ("RAWA"), a low-budget car rental company that traded on the NASDAQ stock exchange until 2002. At the time of the 2006 merger, Schwartz was a major RAWA shareholder, but RAWA's day-to-day operations were overseen by CEO Kenneth Blum, Sr. ("Blum"), and Blum's son, Kenneth Blum II ("Blum II"), who served as president of RAWA until 2004. William Richter, who owned a controlling interest in RAWA's preferred stock and a substantial interest in the common shares, sat on the Board of Directors.

Schwartz alleges that, from approximately 1994 until "the early 2000s," J.A. 372, the Blums mismanaged the company and engaged in a pattern of self-dealing with Richter's acquiescence and occasional active assistance. Schwartz alleges, for example, that RAWA hired companies owned by Blum II to develop

3

software that was unnecessary; that the Blums leased property to RAWA through their own real estate company; that the Blums caused RAWA to pay excessive fees for management services performed by K.A.B., Inc., a company controlled by the Blums; that Blum II and Richter purchased cars through RAWA but retained the profits from resale for themselves; that the Blums diverted company funds for their own personal use and misused company credit cards; and that the Blums and their family members used company cars without compensating RAWA.

According to Schwartz, Mitra Ghahramaniou, RAWA's financial controller, became concerned about this alleged pattern of misconduct and financial improprieties and its effect on RAWA's mandatory SEC filings. Ghahramaniou communicated her concerns to Richter, who allegedly permitted the Blums to "cover up" their activities. J.A. 13. Schwartz claims that, because the Blums feared the activities reported by Ghahramaniou subjected them to potential individual liability under the Sarbanes-Oxley Act, see Pub. L. No. 107-204, § 804, 116 Stat. 745, 801 (2002), codified in part at 28 U.S.C. § 1658(b), the Blums caused RAWA to delist its shares from the NASDAQ exchange so that Sarbanes-Oxley would no longer apply. The complaint alleges that the delisting resulted in a significant drop in the value of RAWA shares and eventually lead to the resignation of Blum II as president. According to the complaint, a subsequent audit

4

revealed numerous financial irregularities, forcing the Blums to repay RAWA for "improper and undocumented expenses." J.A. 14.

Schwartz alleges finally that Richter and Blum, in order "to extract themselves from the problems created" by their conduct, began looking for a company that would purchase RAWA. J.A. 14. Ultimately, RAWA entered into a Merger Agreement with MBFG. Schwartz alleges that Richter, who held a controlling interest in RAWA, and Blum approved the proposed merger even though another buyer produced a more favorable tender offer. Schwartz claims that Richter and Blum settled on MBFG because, unlike the other bidder, MBFG agreed to grant, among other things, "a waiver and release of all claims arising from the facts contained in the Audit Report." J.A. 16.

The Merger Agreement offered RAWA shareholders the option of tendering their shares for the price being offered by MBFG or dissenting from the proposed merger and pressing their appraisal rights. Schwartz opted to accept MBFG's offer and redeem his 400,000 shares of RAWA stock. Schwartz concedes that at the time he tendered his shares to MBFG, he was fully informed as to all material facts related to the merger, including defendants' alleged self-dealing, which occurred years before the merger.

Based on these factual allegations, Schwartz asserted a breach-of-fiduciary-duty claim against all defendants, contending that RAWA shareholders did not receive a fair price

5

for the merger. According to Schwartz, RAWA's "value included claims against the Defendants" that were waived in the merger transaction and, therefore, MBFG paid less than it should have for the merger. J.A. 16. Furthermore, Schwartz alleged in his complaint that the value of RAWA's stock dropped significantly when RAWA delisted from the Nasdaq exchange as a result of defendants' failure to adhere to their fiduciary responsibilities.

Defendants moved to dismiss the complaint, arguing that Schwartz, having tendered his RAWA shares and accepted the consideration offered in the merger proposal, was barred from challenging the fairness of the merger price. While the motion to dismiss was pending, defendants filed a motion for summary judgment asserting that, to the extent Schwartz was pursuing a claim based on defendants' alleged self-dealing and wrongdoing as directors or officers of RAWA, such a claim was barred by Maryland's three-year statute of limitations.

The district court granted the motion to dismiss, concluding that under Bershad v. Curtiss-Wright Corp., 535 A.2d 840 (Del. 1987), Schwartz could not challenge the fairness of the merger after tendering his shares and accepting the benefits of the 2006 merger. Noting that the nature of Schwartz's claim was "difficult to discern from the Complaint," J.A. 377, the district court decided to address defendants' motion for summary

6

judgment even though it had granted the motion to dismiss.  The court granted summary judgment, agreeing with defendants that any claim based on the allegations of wrongdoing was barred by the statute of limitations.  Schwartz challenges both rulings on appeal.

II.

A.

The lack of clarity and precision in Schwartz's complaint complicated the district court's task in this case.  Even on appeal with the aid of counsel's post hoc characterizations of the claim asserted by Schwartz, it is indeed difficult to pin down Schwartz's theory.  That said, we conclude that the heart of Schwartz's claim is a challenge to the price of the merger. This conclusion is confirmed by language in the complaint and Schwartz's opening brief:  "The gravamen of Schwartz's Complaint is that [defendants] breached their fiduciary duties . . . which resulted in a lower price term being realized from the 2006 Merger than would otherwise have been obtained."  Brief of Appellant at 22; see id. at 23 ("Schwartz's Complaint is a challenge to the terms of the 2006 Merger.").

As we understand the claim, the allegations about defendants' improper conduct go to Schwartz's theory about why the merger price was unfair.  He believes that defendants feared

7

liability as a result of their alleged misconduct and thus "bought" protection by agreeing to a lower merger price in exchange for a waiver from MBFG. On the face of the complaint, however, such a theory is simply not apparent. Nevertheless, even if we were to superimpose this theory onto the actual complaint, Schwartz's basic claim would remain the same -- defendants negotiated or otherwise caused an unfair, lowball merger price.

Accordingly, although we appreciate the dilemma created by the pleadings and understand the district court's reasons for ruling on a second dispositive motion, we conclude that the motion for summary judgment was essentially duplicative of the motion to dismiss and that it was unnecessary for the court to address it. For the reasons that follow, we affirm the district court's dismissal of Schwartz's complaint and vacate as moot the order granting summary judgment.

B.

Schwartz argues that the district court erroneously concluded that, by accepting consideration from MBFG in exchange for his RAWA stock, he essentially acquiesced to the proposed merger and could not subsequently challenge the fairness of the price MBFG paid for the shares.

Federal courts sitting in diversity must apply the substantive law of the forum state, see Erie R.R. Co. v.

8

Tompkins, 304 U.S. 64, 78 (1938); Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999), including its choice of law rules, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The parties agree that Delaware law applies to Schwartz's claim; accordingly, we look to the corporate law of Delaware as determined by the highest court of that state. See Ellis v. Grant Thornton LLP, 530 F.3d 280, 287 (4th Cir. 2008) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of West Virginia's highest court, the Supreme Court of Appeals of West Virginia.").

The district court relied upon the Delaware Supreme Court's Bershad decision, which considered whether an informed stockholder -- and Schwartz concedes he was fully informed -- can challenge the fairness of the merger price after "vot[ing] in favor of a merger or accept[ing] the benefits of the transaction." Bershad, 535 A.2d at 842 (emphasis added). The Bershad court answered this question in the negative, holding that a stockholder who has "tendered his shares and accepted the merger consideration" has "acquiesced in the transaction and cannot [subsequently] attack it." Id. at 848.

Despite the apparent death-knell sounded by Bershad for his claim, Schwartz contends that numerous Delaware Chancery Court decisions have narrowed the scope of Bershad. Representative of the decisions cited by Schwartz is In re Best Lock Corp.

9

Shareholder Litigation, 845 A.2d 1057 (Del. Ch. 2001), in which the court concluded that Bershad precludes a stockholder from challenging the merger price only when he tenders his shares and affirmatively votes to ratify the merger. Id. at 1079 (observing that "[t]he result in Bershad would . . . have been different . . . if there had not been a ratifying vote of the minority shareholders"). Moreover, according to In re Best Lock, even if the shareholder votes for the merger and accepts its benefits, he may still challenge the fairness of the merger in an equitable action. See id.; see also In re JCC Holding Co., 843 A.2d 713, 722-23 (Del. Ch. 2003) ("[A] stockholder who casts a vote in favor of, or later accepts the consideration from, a merger effected by a controlling stockholder is not barred by the doctrine of acquiescence, or any other related equitable doctrine such as waiver, from challenging the fairness of the merger.").

There are some circumstances under which a federal diversity court, in determining the applicable state law, can consider the decisions of a lower state court. If the highest state court has not addressed the issue or the law is unclear, the federal court must "forecast a decision of the state's highest court" in light of "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta,

10

and the state's trial court decisions." <u>Wells v. Liddy</u>, 186 F.3d 505, 528 (4th Cir. 1999); <u>see also</u> <u>Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs.</u>, 296 F.3d 308, 312 (4th Cir. 2002) (considering, in the absence of decision by the state supreme court, a decision by the state's intermediate appellate court to be "the next best indicia of what state law is") (internal quotation marks omitted). No such circumstances present themselves here. In <u>Bershad</u>, the Supreme Court of Delaware directly addressed this issue. Since that decision, as Schwartz concedes, the Delaware Supreme Court has not fashioned an exception to <u>Bershad</u> or otherwise narrowed its holding, either explicitly or implicitly. Accordingly, we believe that <u>Bershad</u> remains controlling and it is dispositive of the claim raised by Schwartz.

## III.

For the foregoing reasons, we affirm the district court's dismissal of Schwartz's complaint. To the extent that the district court also granted summary judgment, we vacate that order. Having reviewed and carefully considered the remaining issues raised on appeal by Schwartz, we reject these arguments as well.

<u>AFFIRMED IN PART AND VACATED IN PART</u>

11